### Luther Hays and Levi Hays v. Commonwealth.

(Decided December 8, 1925.)

### Appeal from Warren Circuit Court

1. Indictment and Information—Indictment in Language of Statute for Burning Barn Sufficient, and Not Rendered Invalid by Surplus Matter as to Intent to Collect Insurance.—An indictment under Ky. Stats., section 1169, for willfully and unlawfully burning an insured building belonging to defendants is sufficient, when in language of statute, and not rendered invalid by surplus matter not required by statute, as that burning was with intent to collect insurance, and state was not required to introduce evidence to support such averment.

2. Criminal Law—Instruction Requiring Jury to Find an Additional Fact to Convict, Not Required to Prove Statutory Crime of Burning Insured Building, Held Not Prejudicial.—In prosecution under Ky. Stats., section 1169, for willfully and unlawfully burning insured barn, instruction to find defendants guilty, if, in addition to statutory requirements, defendants acted with felonious intent to collect insurance, was not prejudicial, as it required jury to believe an additional fact to convict.

3. Criminal Law—Evidence Held Insufficient to Qualify Bloodhound whose Trailing was Offered in Evidence.—Evidence as to ability of bloodhound to follow a trail with showing to prove pedigree, held insufficient to render evidence of witness, accompanying hound, as to its trailings competent.

4. Criminal Law—When Evidence of Trailing by Bloodhound Admissible Stated.—Evidence as to trailing by a bloodhound is admissible, when it is shown that dog is a pedigreed bloodhound of a strain known to possess acuteness of scent, and has been trained and tested sufficiently long in trailing humans to have demonstrated ability to discriminate between trails of different persons, and to pursue a given trail with reasonable certainty when once laid on it.

CHARLES R. BELL, G. D. MILLIKIN and E. W. EDWARDS for appellants.

FRANK E. DAUGHERTY, Attorney General, and MOORMAN DITTO, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Reversing.

The two appellants were jointly indicted and convicted in the Warren circuit court of the crime of burning a barn, as defined in section 1169, Kentucky Statutes, and their punishment fixed at confinement in the state penitentiary for one year each. To reverse that judgment they prosecuted this appeal.

The barn was the property of appellants and they had on it a policy of fire insurance. The section of the statute to which we have referred, in part, reads:

"If any person shall wilfully and unlawfully burn . . . barn . . . or other building, or house, upon which there is any insurance or lien, he shall be confined in the penitentiary for not less than one nor more than six years."

Appellants urge a reversal of the judgment (1) because of the insufficiency of the indictment; (2) because the trial court gave an erroneous instruction to the jury; (3) want of sufficient evidence to sustain the verdict; and (4) admission of evidence concerning the trailing of appellants by bloodhounds called to the scene of the fire and used immediately thereafter.

The indictment, which substantially folows the language of the statute, the crime being a statutory one, was sufficient. True, the indictment contains some surplus matter, but this did not invalidate it, the accusatory part reading: "Accuses Luther Hays and Levi Hays of the offense of unlawfully burning a barn on which there was then and there insurance, *with intent to collect the insur-*

*ance,"* and the descriptive part of the indictment reading:

"Did unlawfully and willfully set fire to and burn one building, a barn, same being the property of Luther Hays and Levi Hays, on which there was then and there insurance, *with the felonious intent to collect said insurance and to cheat and defraud said insurance company."*

The italicized words of the indictment were surplusage and did neither add to nor take from the force and effect of that instrument. It would have been sufficient for the indictment to have charged that the defendants unlawfully and willfully burned a barn, the property of themselves on which there was at the time fire insurance, without averring that they did so with felonious intent to collect the insurance or to cheat or defraud the insurance company. While the crime covered by section 1169, Kentucky Statutes, is akin to the common law offenses of arson, it applies only to certain cases, having a specific punishment by confinement in the penitentiary of not less than one nor more than six years. The common law offense of arson carries a penalty of from five to twelve years in the penitentiary. The statute under which the indictment was prepared need not have alleged the burning was done with a felonious intent to collect the insurance or to defraud the insurance company, and the Commonwealth was not required to introduce evidence to support such averments.

It is next insisted by appellants that the instructions were erroneous in two respects. Instruction No. 1 directed the jury to find the defendants guilty if it believed from the evidence to the exclusion of a reasonable doubt that in Warren county, Kentucky, and before the finding of the indictment, the defendants, Luther Hays and Levi Hays, or either of them, did unlawfully or willfully set fire to and burn one barn, the property of defendants, upon which there was insurance and with the *felonious intent to collect the said insurance.* The italicised words were surplusage because it was not necessary for the indictment to aver or the evidence for the Commonwealth to prove that the burning was done with the felonious intent to collect the insurance; but this was not prejudicial to appellants, inasmuch as it required

the jury to believe an additional fact, from the evidence, before a verdict of guilty could be rendered against them.

Appellants' complaint of the insufficiency of the evidence and of the admission of evidence showing that bloodhounds were brought to the scene of the fire and were used to trail appellants, may be considered together and will necessitate a brief review of all of the evidence. Appellants are colored boys. They lived seven or eight miles from Bowling Green, in Warren county, and were farmers, and owned the premises on which the barn stood which was burned. Near it was a dwelling house owned by appellants which they had leased to one Cole, who with his family resided in it and had been cultivating part of the lands, and had stored his provender in the barn and was keeping his live stock therein at the time of the fire. On the other side of the burned barn, a distance of about 100 or 200 yards, was the home of appellants' father at which appellants lived. The fire occurred about seven o'clock at night. Appellants had been around home that day, part of the time, and had been hauling some walnut logs a part of the time. During the day they had engaged a colored man by the name of Shabe to carry them in his automobile to Bowling Green that night. Cole, the tenant, had finished his night chores, ate his supper and had sat before the fire that December evening for some time, when he arose and went to the door. Soon after opening the door he discovered a light in the barn loft which was about fifty yards away. This light, he first thought, was a lantern, but soon discovered that his hay was on fire. Immediately he summoned his family and ran to the barn, his daughter close behind him. As he went to the barn he saw some one leaving the barn and crossing the fence into the road. He could not tell who it was. This person, the daughter testified, was appellant Luther Hays, in her best judgment, but she was not absolutely sure about it. The fire was rather a large one and made a great light, which was seen by neighbors for several miles around. Appellants did not go to the fire. According to their evidence they were on their way to Bowling Green, having left home some time before the fire started. It is proven by the evidence that they did go to Bowling Green that night. It is the theory of the Commonwealth that they fired the barn before they left, and,

immediately taking an automobile, hurried towards Bowling Green, so that they were some three or four miles out at the time the fire gained headway enough to make a large light. In substantiation of their *alibi* appellants proved that when they were out three or four miles from home on their way towards Bowling Green their attention was called for the first time to the light made by the burning barn but that they did not think it was near their home, and continued towards Bowling Green. They stopped along the road at different places and saw several people, some of these persons testifying that the light from the burning barn could be seen and that they called attention of appellants to the fact that the fire appeared to be in the direction of their home. After going to Bowling Green to see one Miller, who dealt in walnut logs, as they say, but without seeing him, they returned home late that night; they did not go to the barn (which was then in ashes) on their return although it was near at hand, nor make any inquiry concerning the origin of the fire. As an excuse for this appellants say they were afraid to go, having heard that bloodhounds had been brought to the scene for the purpose of tracking the culprits. Soon after the fire happened a deputy sheriff living some miles away and owning dogs which were reputed to be bloodhounds, was called to bring his dogs and come to the fire. He did so, and after arriving laid his dogs on the trail of the person who crossed the fence just as the barn was discovered on fire. He testified his dogs trailed the person crossing the fence down through an orchard to the road near the home of appellants. Here he discovered automobile tracks, and his dogs could not thereafter find the trail. At this point counsel for appellants moved to exclude all the evidence given by the witness concerning the bloodhounds, which was overruled; thereupon counsel for Commonwealth asked the witness the following questions concerning the pedigree and training of his hounds:

"Q. How long have you owned this bloodhound? A. Nearly two years.

"Q. What observation and what proof have you had to observe his work as a trailer? A. If you give him a chance to stay on the ground he will try to catch him, but when it comes to automobiles he is at the end of his row.

"Q. Is this a high-grade bloodhound? A. Yes, sir.

"Q. Is he able to hold a trail under ordinary circumstances? A. I think he is or I wouldn't be using him.

"Q. Do you find him to be reliable? A. Where you have a good chance I do—he is all right."

This was all the evidence upon the subject. It is insisted by appellants that the evidence did not show that the dogs were pedigreed and otherwise qualified under the rule prevailing in this state, as set out and reaffirmed in the cases of Blair v. Commonwealth, 171 Ky. 319, and Pedigo v. Commonwealth, 103 Ky. 41.

The court in the Blair case, commenting upon the evidence offered by the Commonwealth in support of the qualification of the hounds and their pedigree and training, said:

"In the instant case, the only witness who testified as to the qualities of the dogs was their owner, Robert Pigue. He was asked: 'Have you got some blooded dogs?' to which he answered: 'Yes, sir.' In reply to further questions he also said that one of the dogs was about eight years old and the other about three or four; that they were bloodhounds; that he had owned them about two years; that one of them had been used all his life in trailing people; and that they were trained by George W. Simpson, at Dyersburg. It will be observed that the testimony gives no information as to the pedigree of the dogs. It is true the witness also said they were bloodhounds, but whether they were thoroughbred bloodhounds or of such strain or breeding as are characterized by acuteness of scent and power of discrimination, and by reason thereof customarily trained for use and used in trailing persons, was not stated by the witness; and the general statement of the witness that one of the dogs had been used for trailing all his life, and both had been trained by Simpson, does not show that he had personally known of their being used for trailing a person at any time, or that Simpson was an expert in the training of bloodhounds for such purpose. Applying to the testimony of the owner of the dogs the test aproved by the authorities, *supra*, we are con-

strained to declare it insufficient to demonstrate the reliability of the dogs whose trailing was relied on to convict the appellant in this case. . . . It is our conclusion, therefore, that the admission of evidence of the trailing done by the dogs was error.''

The rule for qualifying a bloodhound whose trailing is offered as evidence is stated in the case of Pedigo v. Commonwealth, 103 Ky. 41, as follows:

''After a careful consideration of this case by the whole court, we think it may be safely laid down that, in order to make such testimony competent, even where it is shown that the dog is of pure blood and of a stock characterized by acuteness of scent and power of discrimination, it must be also established that the dog in question is possessed of these qualities and has been trained or vested in their exercise in the tracking of human beings, and that these facts must appear from the testimony of some person who has personal knowledge thereof. We think it must also appear that the dog so trained and tested was laid on the trail, whether visible or not, concerning which testimony has been admitted at a point where the circumstances tend clearly to show that the guilty party had been or upon a track which such circumstances indicate to have been made by him. When so indicated testimony as to trailing by a bloodhound may be permitted to go to the jury for what it is worth as one of the circumstances which may tend to connect the defendant with the crime of which he is accused. *When not so indicated the trial court, should exclude the entire testimony in that regard from the jury.''*

We do not think the evidence concerning pedigree and training of the hounds in the instant case is as strong as that in the Blair case to which we have referred, and not being so was insufficient to warrant the introduction of evidence concerning the trailing done by the hounds in the case against appellants.

There was no attempt to prove the pedigree of the dogs and but a feeble effort to prove that the dogs, or either of them, had been trained to track human beings. This was necessary before the evidence was admissible, for it is well known and generally recognized that such

evidence is of little probative value even when carefully guarded, sometimes leading to false conclusions. However, it is admitted for what it is worth when it is shown that the dog is a pedigreed bloodhound of a strain that is known to be possessed of acuteness of scent and has been trained or tested sufficiently long in the trailing of human beings to have demonstrated its ability to discriminate between the trail of different persons and to pursue a given trail with reasonable certainty when once the hound has been laid on it. 12 Cyc. 393; 16 C. J. 565; 8 R. C. L. 184 and 185.

The evidence given by the witness who accompanied the bloodhounds on their trailing in the direction of the home of appellants, in fact to their very gate and door, was wholly incompetent for want of evidence showing the pedigree and training of the bloodhounds, and we are constrained to hold it was highly prejudicial without a further and better showing of the qualifications of the dogs. For this error the judgment must be reversed and cause remanded for new trial in conformity to this opinion.

Judgment reversed.