# Stahl v. Commonwealth.

(Decided June 3, 1932.)

GARDNER & McDONALD and M. C. ANDERSON for appellants.

BAILEY P. WOOTTON, Attorney General, and FRANCIS M. BURKE, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

The appellant, Jim Stahl, shot and killed W. M. Hammonds on July 12, 1930. An indictment was found against him charging him with the murder of Hammonds and on his first trial the jury failed to agree. At the second trial he was convicted of manslaughter and sentenced to a term of five years in the state penitentiary. On this appeal he relies upon the following grounds for reversal of the judgment: Errors in the instructions, admission of incompetent evidence, and misconduct of the commonwealth's attorney in the interrogation of the commonwealth's witnesses and in the cross-examination of de-

fendant's witnesses and in his closing argument to the jury.

While no contention is made that the evidence is not sufficient to take the case to the jury and to sustain its verdict, a brief statement of the facts is essential in the discussion of the assigned errors.

The decedent was seventy years of age and was a tenant on the farm of D. E. Stahl, father of appellant. He lived in a three-room house on the Stahl farm with his wife, who was forty-five years of age, and their six children. D. E. Stahl was an invalid during the year 1930, and appellant was managing his father's business and looking after the farming operations. In April of that year he had an altercation with the deceased and his sons which resulted in a fight in which appellant's thumb was broken. There was a second difficulty later during which appellant struck the deceased with a tobacco stick. Thereafter appellant and deceased never spoke to each other.

Several witnesses testified that they had heard the deceased threaten to kill the appellant and two of these threats were communicated to him. On the day of the killing appellant was baling hay in a field on his father's farm about two hundred yards from the house occupied by the deceased and his family. Ralph Howcroft had been employed to do the work and he had employed several men and boys to assist him. The house in which deceased lived was located on a road, and the yard had been fenced but the fence had practically disappeared. On the morning of July 12, appellant drove in his automobile to a point in front of the deceased's house where he parked it under a tree. He then walked through the yard and went to the place where Howcroft and the other men were baling hay. When he left at noon, John Wright, Howcroft, and the latter's two sons accompanied him. They walked through the yard to the automobile and drove to appellant's home, which was about a mile distant. They soon returned and again walked through the yard. At this time the deceased, his wife, and five of their children were in the yard and near the path followed by appellant and his companions. The deceased was sitting in a chair which was leaning against a fence post; his wife was sitting under a tree about ten or fifteen feet away, and the children were lying on the ground. Appellant and Howcroft passed through the

yard without speaking to the deceased or any member of his family, but Wright stopped and engaged in a conversation with the deceased. While he was there Mrs. Hammonds remarked, evidently referring to appellant, "This makes twice he has went through my yard and he mustn't come through here any more." A few minutes later Wright repeated to Howcroft the statement made by Mrs. Hammonds. Appellant was standing near by but he claims that he did not hear the conversation between Wright and Howcroft. About thirty minutes later appellant announced that he was going to Lovelaceville, a nearby village, to get a shave. Howcroft started with him. They again passed through the yard near the deceased and the other members of his family, Howcroft walking four or five steps in front of appellant, who was carrying in one hand a fish weighing three or four pounds which one of the Howcroft boys had given to him to take to Lovelaceville to put on ice. The fish was hung on a wire. As appellant passed Mrs. Hammonds she said: "Don't come through my yard any more." At this time her husband was seated about ten or fifteen feet away whittling on a stick with a knife. Up to this point there is no dispute in the evidence. Mrs. Hammonds testified that the appellant said he would pass through the yard when he "got damn good and ready," and then struck her across the head with the fish; that he then drew his pistol and shot at her and then turned and shot her husband, who had started to get up out of the chair. Her testimony is supported by that of several of her children who were present. Appellant denied that he made any response to Mrs. Hammonds when she ordered him not to pass through the yard, but claimed that he was walking on when Mrs. Hammonds grabbed him by the arm and the deceased then got up and started toward him with his knife. He jerked loose from Mrs. Hammonds, but deceased continued to advance and struck at him several times with the knife, inflicting a slight wound above his eye and cutting his shirt near the neckband. Believing he was in danger of great bodily harm at the hands of the deceased, he drew his pistol and fired one shot.

Ralph Howcroft testified that after he had passed Mrs. Hammonds he heard her say to appellant that he must keep out of her yard. He then heard the appellant laugh, turned around, and saw the deceased getting up.

He caught appellant by the arm and said, "Let's get out of here." Appellant jerked loose from him, and as Howcroft turned and started away he heard the pistol fire.

In the meantime Mrs. Hammonds and her son James Hammonds had gone to the house. James Hammonds procured a shotgun and shot through the open door at appellant, who was standing about fifty feet away. He was painfully, though not seriously, wounded. This happened, however, after appellant had shot the deceased.

The only instruction to which criticism is directed is instruction No. 4 which reads:

"Although you may believe from the evidence beyond a reasonable doubt that the defendant shot and killed W. M. Hammonds, still if you shall further believe from the evidence that at the time he did so, he had reasonable grounds to believe and in good faith did believe that he was then and there in danger either real or to him reasonably apparent, of suffering death or great bodily harm at the hands of the said W. M. Hammonds and that it was necessary or appeared to the defendant in the exercise of a reasonable judgment to be necessary to so shoot and kill the said W. M. Hammonds to protect himself from such impending danger, either real or to the defendant reasonably apparent, then you should find the defendant not guilty on the grounds of self-defense or apparent necessity; unless you shall further believe from the evidence beyond a reasonable doubt that the defendant, when he did not believe and have reasonable grounds to believe that he was in real or apparent danger of suffering death or other great bodily harm at the hands of said W. M. Hammonds, wilfully and feloniously brought on the difficulty (with Madey Hammonds, wife of W. M. Hammonds, by the use or threatened use of a deadly weapon and was then and there in the act of inflicting loss of life or serious bodily harm on the person of said Madey Hammonds), and the said W. M. Hammonds interfered to prevent said danger to Madey Hammonds, and in which latter event the defendant cannot be excused upon the grounds of self-defense or apparent necessity."

It is insisted that this instruction is erroneous for two reasons: (1) Because it fails to include the right of

appellant to defend himself against those acting in concert with the deceased, W. M. Hammonds; and (2) because it qualifies his right of self-defense. There is no evidence tending to show that appellant believed, or had reasonable grounds to believe, that he was in danger of death or the infliction upon him of great bodily harm at the hands of any one present except the deceased. He testified that he shot Hammonds to prevent the latter from cutting him with a knife. He stated that Mrs. Hammonds grabbed his arm, but he admitted that she started to the house before he shot her husband. James Hammonds did not appear with the shotgun until after his father had been shot. Appellant does not claim that he believed when he shot the deceased he was in danger of bodily harm at the hands of James Hammonds, and there is no evidence that any of the other children present took any part in the altercation or that any one present was acting in concert with deceased. It follows that the court did not err in failing to embody this idea in the instruction. Mullett v. Commonwealth, 233 Ky. 785, 26 S. W. (2d) 46; Griffin v. Commonwealth, 204 Ky. 783, 265 S. W. 327.

The contention that the trial court erred in qualifying appellant's right of self defense likewise is without merit. It is the theory of the commonwealth that appellant brought on the difficulty, and its theory is supported by the testimony of several witnesses, all members of the Hammonds family it is true, who testified that he first struck Mrs. Hammonds with the fish and then shot at her. Under the evidence the instruction qualifying appellant's right of self-defense was proper. Smith v. Commonwealth, 236 Ky. 15, 32 S. W. (2d) 530.

The alleged misconduct of the commonwealth's attorney in the interrogation of witnesses and the alleged errors in the admission of evidence will be considered together. Criticism is made of the method of interrogating the witness Howcroft, who was introduced by the commonwealth. He was patently a reluctant witness and, though present at the homicide, insisted that he saw and heard very little of the difficulty, and the few facts to which he testified were drawn from him only after a searching examination. The commonwealth's attorney asked him several leading questions and confronted him with his testimony given on the first trial, but under the circumstances some latitude was permissible in the direct

examination of this witness and no prejudicial error was committed. Appellant accounted for his presence near the Hammonds home on the day of the difficulty by saying that he was in charge of the farming operations of his father who was an invalid. On cross-examination he was asked if he had not had a difficulty with his father and if his father had not objected to his managing his business. An objection to this question was overruled and the witness answered in the negative, which cured the error, if any. Appellant was asked on cross-examination if he had not seen Jim Duly with a pistol similar to the one with which he killed Hammonds. He replied that he did not know Mr. Duly, and he was then asked if he and Duly did not make an affidavit when a third person was being tried for having a still in his possession in which appellant and Duly swore it was appellant's still. This question was improper but no objection was made. Other improper questions were asked, but objections to most of them were sustained, and we do not consider any of them sufficiently prejudicial to authorize a reversal of the judgment.

Many statements made by the commonwealth's attorney in his closing argument to the jury, and which were objected to at the time, are set out in the bill of exceptions. To incorporate them in this opinion would unduly lengthen it, but it is sufficient to say that we have carefully considered them and have concluded that under the circumstances they were not prejudicial. Many of them were improper and should not have been made. It is the duty of the prosecuting attorneys to see that the legal rights of the accused as well as those of the commonwealth are fully protected, and in their zeal they should not lose sight of the fact that they are officers of the court charged with the duty of seeing that the accused is fairly dealt with. The record in this case is a large one and is unusually free from error in every respect other than the misconduct of the attorney for the commonwealth. There was ample evidence to warrant a verdict of guilty and, in view of the light sentence imposed, it cannot be said that the minds of the jury were inflamed by the improper argument. It clearly had no part in influencing the minds of the jury in arriving at the verdict returned.

The judgment is affirmed.

The whole court sitting.