## Simpson v. Commonwealth.

(Decided Oct. 7, 1932.)

CHARLES B. SPICER and H. H. FUSON for appellant.

BAILEY P. WOOTTON, Attorney General, and FRANCIS M. BURKE, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

The appellant, Fred Simpson, was indicted on August 19, 1931, by the grand jury of Harlan county for the murder of Guy Blanton, and at the March term, 1932, of the Harlan circuit court, he was tried and convicted of manslaughter, and judgment entered thereon sentencing him to confinement in the state reformatory for a period of 21 years.

His motion and grounds for a new trial being overruled, he has appealed, and relies upon the following grounds for a reversal of the judgment: (1) Errors committed in the admission of alleged incompetent evidence; and (2) for error alleged in instructing the jury and failing to give the whole law of the case.

A brief statement of the facts is needful for the clearer discussion and disposition of these grounds of error assigned.

On Saturday night of June 27, 1931, the appellant, Fred Simpson, entered the Holiness Church at Dixietown, Harlan county, Ky., armed with an automatic pistol and, according to some of the evidence, intoxicated.

Upon entering and seeing his brother, Omar Simpson, and Bill Stanley, standing and talking in the rear of the churchhouse, he approached them and accosted Stanley. There is a conflict of evidence as to who insulted or cursed the other at this meeting. At any rate, it is admitted that immediately there followed a quarrel and scuffle between them and their friends there in the church; also that thereupon Hobart Taylor and Guy Blanton, the deceased, they being at the time of the congregation, rushed back to where the wordy quarrel and "racket" was going on between the appellant and Stanley and ordered the appellant to leave the churchhouse.

It appears that the appellant was further angered by this command given him to leave, and that a further difficulty arose also between him, Taylor, and the deceased, Blanton.

The evidence is very conflicting as to just what was said and done by defendant and these others at this time of the scuffle had in the churchhouse, but it appears that Guy Blanton, the deceased, and Hobart Taylor each took an active part therein, which the commonwealth claims was only their joint effort to put the then disorderly appellant out of the church, but appellant claims that he was then cursed, choked, and knocked about by both Taylor and Blanton.

The commonwealth, over the objection of appellant, further introduced evidence showing there had been a difficulty between the appellant and Bill Stanley and Hobart Taylor the night before.

After some words and rough scuffling between these parties in the rear of the church, the appellant started backing out of the church, followed by the decedent, Blanton, and also by Stanley and Taylor, though this is denied by them, who testify that they remained in the church as appellant backed out therefrom and participated no further in this church brawl, which resulted a few minutes later in the shooting and killing by appellant of Guy Blanton.

The evidence is further conflicting as to who was the aggressor and what was the action and speech of the appellant and deceased, Guy Blanton, after the former had backed out of the church with drawn pistol, followed, it is admitted, by Guy Blanton a few steps from the church door, where the fatal shooting of Blanton occurred.

According to the commonwealth's evidence, Blanton even when in the church had only accosted the appellant by way of requesting him not to continue his disturbance of worship there, and later followed him out of the church for the purpose of disarming him. However, defendant's witnesses state that Guy Blanton pursued him out of the church, cursing him, and stating that he was going to kill him, and, when they advanced a few steps from the church steps, struck him a hard blow on the head, knocked him to the ground, and was beating him with one hand and choking him with the other at the time appellant fired and killed him.

It further appears by the evidence that the appellant is a small, frail man, some 5 feet 5 inches high and 110 pounds in weight, while Bill Stanley, Hobart Taylor, and the deceased, Guy Blanton, were each and all large, strong men, weighing 175 pounds or more.

We will now consider the objection urged and argued by counsel for appellant that the latter was prejudicially injured in his trial rights through the admission by the court of the alleged incompetent evidence showing a difficulty to have occurred between appellant and Stanley and Taylor on the evening before and further erred in admitting evidence as to what was the stage of the church services, to the effect that the worshipers were beginning to sing or pray or that the minister was preaching or giving the "altar call" at

the time of appellant's disorderly entry into the church-house.

The appellant cites no authority in support of this latter contention and none in point as excluding evidence of a previous difficulty, and we are of the opinion that the objections made upon these grounds are without merit, as this evidence complained of, we are of the opinion, was proper as part of the res gestæ, showing the place, time, and under what conditions the crime charged was committed, and that as such it was competent to show, not only where the difficulty began, but the circumstances under which it arose, together with what those persons then present were doing at the time this fatal difficulty began. If the appellant chose the church as the place, and the hour of worship therein as the time, at which to begin this difficulty, consummated in the killing of Blanton, the responsibility therefor is his, and it is his choice of such an inappropriate place and such an inopportune occasion that is in itself prejudicial to him.

It is therefore our conclusion that the appellant suffered no prejudice from the introduction of this evidence as to his difficulty had with Stanley and Taylor on the previous evening. Only the fact of such occurrence was permitted to be given in evidence, without any of the details or circumstances thereof. We conceive it was rightly admitted as tending to show the animus and intent with which the appellant armed himself and came to the church the next night, where their quarrel was at once renewed and participated in by the decedent, Guy Blanton, together with Stanley and Taylor, at the cost of his life. The evidence of this difficulty on the night before tended to furnish or show appellant's motive and intent in seeking the very next evening an armed meeting with Stanley and Taylor and his feeling towards them and the decedent, Blanton, who at such time acted with them. It is further in evidence that but a few minutes before this second meeting at the church by the appellant of Stanley and Taylor and Blanton that the appellant stated to some of the witnesses that he was armed and was going to the church to kill these three men. We are of the opinion that the previous difficulty was thus so connected in time and circumstance with the second as to render competent evidence as to the fact of its occurrence.

Passing now to the further complaint of appellant that the self-defense instruction No. 4 was erroneous in not giving the whole law of the case, by failing to include therein the right of appellant to defend himself also against Bill Stanley and Hobart Taylor: Appellant contends and earnestly insists that the court erred in limiting appellant's rights of self-defense to reasonably apprehended peril at the hands of Guy Blanton only, and argues that appellant was entitled to have included in the instruction that theory of reasonably apprehended peril at the hands of Hobart Taylor and Bill Stanley upon the ground that the evidence shows that Taylor and Stanley were at the time confederating and acting in concert with Blanton in pursuing the appellant at the time he shot and killed Blanton. In support of this argument, he quotes the evidence of several of the witnesses who refer to the said Stanley and Taylor as having, together with the deceased, Guy Blanton, followed and pursued the appellant from the church as he backed out of it. Also the appellant, as he backed out of the church, had answered his brother's command to "put up that pistol" by saying, "There is two or three trying to run over me and I am trying to take my part." Also another witness testifies that he (the appellant) was "telling the fellows that followed him out, Guy Blanton and Hobart Taylor and Bill Stanley and a big bunch more behind him. Told them not to crowd him, he didn't want any trouble," and another testifies that the appellant answered his brother, saying that "he was a little fellow and all these big fellows tried to run over him." However, it appears that, whatever might have been the intention of Stanley and Taylor to hurt or injure the appellant while in the church and acting then with Guy Blanton, there is no evidence that they continued such course of action beyond the church or made any demonstrations when outside the church calculated to permit appellant to reasonably apprehend peril at their hands while appellant and the decedent, Blanton, were enacting the final act of this tragedy outside the church. The testimony of the appellant himself clearly negatives the theory here contended for by appellant that, at the time of his shooting of Guy Blanton, he believed himself in danger of death or bodily harm from any one other than Guy Blanton alone.

His own testimony, showing his state of mind and

what he believed and feared was his danger at the time when he claims to have in self-defense shot Guy Blanton, is as follows:

"* * * And about that time Guy said, 'Let loose of him' and he grabbed me and churned me up against the door facing and wall and I says, 'Guy, I don't want any trouble' and I backed out on the little platform and I pulled my pistol and I said, 'Guy, get back,' and I asked him to stand back two or three times, and I was backing to keep from having trouble.

"Q. Why were you backing? A. I was trying to get out of the way so I could run. I was afraid to turn my back and I was trying to back out where I could keep from having trouble and he kept pressing on me and the first thing I knowed he had me down and knocked out, had me knocked out for a space of time.

"Q. Who hit you? A. Guy Blanton.

"Q. Where did he hit you? A. Hit me in the face and head and knocked me out for a space of time.

"Q. When he hit you what was the next thing you remember? A. I was on the ground and he was on top of me, hitting me, beating me in the face and head.

"Q. Have hold of you any way? A. Had hold of me right here (indicating throat) and beating me with his right hand and I pulled up the gun and it went off.

"Q. What effect, him having hold of your throat have on you? A. Had my breath and wind off and when the shot fired he kinder loosened up and I crawled out and his brother grabbed me and tried to take the pistol away and some of them got there and I give the pistol away to keep him from getting it.

"Q. How many shots you fire? A. One is all I remember. If I fired two I don't remember. When he hit me it knocked me out a space of time and everything turned red and I had to get him off some way.

"Q. When you fired the shot what was he doing? A. He was beating me in the face.

"Q. Where did he have his left hand? A. Had his left hand on my throat. (Commonwealth objects—repetition. Court sustained objection, defendant excepts.)

"Q. Why did you fire the shot? A. To keep him from killing me. . I thought he was going to kill me and he had me half killed."

It thus appears from the words of the appellant himself that he shot and killed Guy Blanton because he thought that Guy Blanton was going to kill him; that it was at his hands only he then apprehended peril. No one else is mentioned as then threatening him, or by him apprehended as acting in concert with Guy Blanton in attacking him.

Appellant, through counsel, cites many authorities wherein the court gave an instruction extending the right of self-defense of the accused to all of those acting in concert and at whose hands he could reasonably apprehend peril at such time, and such instruction approved as rightly so given in those cases, because the evidence supported the claim of the accused that he, at the time of the shooting in his alleged self-defense, did reasonably apprehend death or great bodily harm at the hands of the several assailants then attacking him in concert. The extended self-defense instruction given in these cited cases have our full approval, but we do not deem them in point or as controlling in the instant case, where the evidence of the appellant himself negatives the theory of concerted attack and is to the effect that, at the time he shot in his alleged self-defense, he apprehended peril only at the hands of the decedent, Guy Blanton, thus excluding the theory contended for that he, at the time, apprehended peril to himself also at the hands of Bill Stanley or Hobart Taylor as then acting in concert with Blanton.

It therefore follows that this objection of the appellant is not meritorious, and should not for the reasons stated be sustained. Griffin v. Commonwealth, 204 Ky. 783, 265 S. W. 327; Stahl v. Commonwealth, 244 Ky. 356, 50 S. W. (2d) 952; Mullett v. Commonwealth, 233 Ky. 785, 26 S. W. (2d) 46.

Counsel for appellant in their brief insist that the punishment given him by the jury of 21 years is severe, and in itself shows that the evidence introduced over

his objection prejudicially influenced it against the defendant, and that their verdict fixing his punishment of the charged offense at confinement for 21 years showed that they were influenced by passion and prejudice in their so severely finding against him.

The jury, however, heard the conflicting testimony of many eyewitnesses, considered their demeanor on the stand as they undertook to relate the circumstances and manner in which appellant's killing of Guy Blanton occurred, and doubtless they knew many of these witnesses and their credibility and exercised their own judgment as to what weight and belief should be given by them to their conflicting testimony. There was ample evidence heard by them to warrant the verdict of guilty found by them, and we are not disposed to disturb their verdict, as same is not palpably against the evidence.

We appreciate the loyalty and zeal of the attorneys appointed by the court to present the defense, both in the trial court and here, for the appellant, and we wish to commend the skill and industry with which they have, without compensation, rendered such valuable service to him.

However, after a careful consideration of the entire record, we are of the opinion that the defendant has had a fair and impartial trial, and, perceiving no error to have been committed prejudicial to the substantial rights of the appellant, the judgment should be, and is, affirmed.