## Mills v. Commonwealth.

(Decided May 28, 1935.)

J. B. CAMPBELL for appellant.

BAILEY P. WOOTTON, Attorney General, and H. HAMILTON RICE, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

The appellant was jointly indicted with Marshall Mills and Edward Mills for the murder of Jesse Baker, and on his separate trial was convicted of manslaughter and sentenced to six years in the penitentiary. His grounds for a reversal of the judgment may be epitomized in one, to wit, the testimony of the accomplice, Edward Mills, was not sufficiently corroborated under section 241 of the Criminal Code of Practice, since there was no other evidence tending to connect appellant with the commission of the crime and the trial court, therefore, erred in overruling his motion for a directed verdict in his favor.

Jesse Baker was killed at the site of a moonshine still a few hundred yards from the home of Bill Mills on September 15, 1930. Marshall Mills and his son, Edward Mills, were indicted, and on their separate trials Marshall Mills was convicted of the crime of murder and sentenced to the penitentiary for life and Edward Mills was convicted of the crime of manslaughter and sentenced to a term of twenty-one years in the penitentiary. Appeals were prosecuted to this court and the judgments were reversed. Marshall Mills v. Commonwealth, 240 Ky. 359, 42 S. W. (2d) 505; Edward Mills v. Commonwealth, 241 Ky. 218, 43 S. W. (2d) 670. On November 10, 1931, a few days before the judgment in the case of Edward Mills v. Commonwealth was reversed, this indictment was returned against Bill Mills. Marshall Mills was again tried after the reversal of the judgment in his case and he was again convicted. The indictment against Edward Mills is still pending. Appellant and Marshall Mills are brothers, and Edward Mills, who was seventeen years of age at the time of the homicide, is appellant's nephew.

He testified at the first trial of his father and at his own trial, in substance, that he and his father left their home about 9:30 on the morning of the homicide intending to go to the home of Bill Mills. On their way to appellant's home they passed the place where the still was located and saw Jesse Baker sitting within three or four feet of it. Edward Mills was walking five or six steps behind his father. When Jesse Baker saw them he began cursing, drew his pistol, and began shooting at Marshall Mills. When Baker fired the first

shot, Marshall Mills dropped to his knees, and Edward Mills, thinking that his father had been shot, turned and ran away. He later heard the report of a shotgun. At the trial of Bill Mills he recanted the story he had told on the two former trials and testified that he, his father, and Bill Mills went to the place where the still was located and saw Jesse Baker lying on the ground. His father and Bill Mills were armed with shotguns and they both began shooting at Baker. After Baker was shot he saw his uncle walk to Baker's side and place a pistol on the ground near the body. Neighbors who discovered the body found a pistol lying on the ground which admittedly had been owned by Marshall Mills. Edward Mills further testified that after the shooting his father and Bill Mills told him to testify that his father shot Baker in self-defense and not to mention the fact that Bill was present.

Oliver Baker, the ten year old son of the deceased, testified that his father, Marshall Mills, and Bill Mills were interested in the operation of the moonshine still, and that on the night before the homicide he and his father left their home about midnight and rode a mule to the home of Bill Mills. They put the mule in Bill Mills' stable and slept in the loft of the stable until daylight, when appellant called them. They had breakfast at Bill Mills' home and then, accompanied by appellant, went to the still site a few hundred yards away. Appellant fired the still and told the deceased to station himself at a certain point and watch for the officers. Appellant then walked away. Jesse Baker lay down and apparently went to sleep. Oliver Baker sat down on the ground near him, and an hour or two after appellant had left he heard the report of a gun. The first shot struck his father in the head and he ran down the mountain side without seeing who was firing the guns.

Grant Baker testified that appellant came to his home about 1 o'clock on the day of the homicide and told him that Jesse Baker had been killed. He asked appellant who killed him, and appellant replied: "Me and my brother shot about the same time. I don't know which killed him."

Noah Shelton testified that more than a year after the indictment was returned, appellant, at a time when he was seeking witnesses who would testify in his be-

half, told the witness that he and his brother, Marshall, had killed Jesse Baker. Quoting the witness:

"He said that him and Marshall was up in the hollow there somewhere up above his place and he said that they was running a still, said that him and Marshall took a notion that they would kill Jesse Baker for some debt he owed Marshall and wouldn't pay it. He said you need never take a young fellow with you to do anything, that they would come out and tell it on you. He said they killed him. (There was) kindly a sink in the hollow and one went on one side and one on the other and got behind trees and killed him."

There was evidence that deceased had on his person $42 in money and a silver watch when he went to the still site. The money and watch were not on his body when it was found.

Appellant denied that he was present when the homicide occurred, or that he had any connection with it. He admitted, however, that he was in the vicinity and heard the shots. He denied that the deceased and Oliver Baker stayed at his home on the night before the homicide.

In addition to the direct testimony of Edward Mills, there were facts and circumstances tending to connect appellant with the commission of the crime as well as his admissions to at least two witnesses. An effort was made to discredit these witnesses, but their credibility was a question for the jury.

The corroborating testimony required by section 241 of the Criminal Code of Practice need not be sufficient, standing alone, to establish the defendant's guilt of the offense charged, but it is only necessary that it shall, in a substantial way, tend to connect the accused with the commission of the crime and thus corroborate the testimony of the accomplice. In Williams v. Commonwealth, 257 Ky. 175, 77 S. W. (2d) 609, 614, the authorities were exhaustively reviewed and the rule for determining the sufficiency of the corroborating testimony within the meaning of section 241 of the Criminal Code of Practice was thus stated:

"The cited Code provision, however, by its language clearly manifests that the legislative intent as

therein expressed is to preserve the accomplice testimony as evidence of the defendant's guilt, but that it should not be accepted by the jury as in itself sufficient for conviction unless confirmed by other corroborative evidence. The Code requirement is only that the accomplice testimony shall be corroborated by other evidence tending to connect the accused with the commission of the offense which falls far short, when reasonably interpreted according to the natural meaning and import of its words and also in harmony with its commonlaw origin, of requiring that such corroborating evidence called for is such as must be in itself, when considered as separate and distinct from the accomplice testimony or with that eliminated, sufficient to establish the guilty connection of the accused with the perpetration of the crime.''

In the instant case the evidence met the test prescribed in the Williams Case.

The judgment is affirmed.