## Alexander v. Commonwealth.

(Decided Jan. 14, 1936.)

C. J. WILSON and BERT KING for appellant.

BAILEY P. WOOTTON, Attorney General, H. HAMILTON RICE, .Assistant Attorney General, and ULIE J. HOWARD, Commonwealth's .Attorney, for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER— .Affirming.

G. Hershel Alexander, Bernard Pfeiffer, Fred Boone, and Arthur Tonan, alias Robert Coleman, alias ·George Mason, have been jointly indicted by the grand jury of Kenton county for the crime of robbery with offensive weapons, and, upon separate trial, Alexander has been found guilty and his punishment fixed at imprisonment for 21 years. He is appealing.

As grounds for reversal it is argued in substance (1) that the verdict is flagrantly against the evidence, since it is sufficient to merely raise a suspicion of appellant's guilt; (2) that appellant has been convicted upon evidence of accomplices, and that such evidence is not sufficient to warrant a conviction unless corroborat-- ed by other evidence extending to every fact necessary to establish the fact that the offense charged was committed and that the accused was the perpetrator; and (3) that in his closing argument the commonwealth's attorney made prejudicial statements calculated to inflame and prejudice the minds of the jury. Necessarily the first two grounds call for a brief statement of the facts and circumstances as revealed by the evidence.

James H. Brink conducts a roadhouse on the Dixie Highway a few miles out of the city of Covington. About 4 o'clock on the morning of March 18, 1935, three masked men armed with pistols and a sawed-off shotgun entered one of the buildings owned by Brink and robbed him of about $1,600. They also robbed a number of his employees of money and other valuables, included in which was a diamond ring belonging to Mrs. Mae Black.

Tonan and Boone were called as witnesses by the commonwealth and admitted that they and Pfeiffer ·committed the robbery. Their evidence as well as the evidence of Mrs. Mack shows that they took a diamond ring from her. They testified, however, that appellant took no part in the robbery and had no connection whatever with it; that he did not counsel or advise with them concerning the robbery or participate in a division of the money and valuables taken by them. They were asked concerning written statements sworn to by

them which implicated appellant. They disavowed these statements and testified that they were made under threats, duress, promises of immunity and the belief that it would be to their advantage to so implicate him.

The evidence for the commonwealth shows that some time previous to the night of the robbery, appellant visited Brink's place and his actions and close observations of the premises were such as to attract the attention of employees and to arouse suspicion. The evidence further shows he went to Brink's place about 2 o'clock on the morning of March 18, 1935, and remained there until all the other patrons had left and a short time before the three masked men entered the building. His actions again were such as to attract attention and arouse suspicion. Pfeiffer and his wife lived at 508 East Twenty-First street in Covington and Tonan and a paramour named Vivian Holiday lived with them. She and Mrs. Pfeiffer testified that appellant and Boone came to their home the evening before the robbery and the four men were in a conference for an hour or more in a separate room. After appellant and Boone left, the occupants of the apartment played cards for awhile and before retiring Pfeiffer and Tonan set the alarm for 12 o'clock. When the alarm sounded the men got up and left, taking with them a suit or packing case which the evidence shows contained pistols and other weapons. They returned to the apartment about 5 or 6 o'clock and slept for some hours. In the afternoon, appellant and Boone again went to the apartment, appellant procured a newspaper carrying an account of the robbery, and the four men again went into a secret conference. Later the diamond ring taken from Mrs. Mack was located in the Eagle Loan Office in Indianapolis, Ind., and the pawn broker identified appellant as the man who pawned it, giving his name as Newsome. Appellant testified that Mrs. Pfeiffer came to his home and asked him to dispose of the ring for her, and in this he was corroborated by his sister, with whom he lived, and by another who claimed to have heard a part of the conversation. Mrs. Pfeiffer denied that she went to his home. She testified, however, that her husband had the ring a day or so after the robbery but that she did not see it again until she went with appellant to Louisville, where he procured it from another party, and they went to Indianapolis, where appellant pawned it. Maurice Callaghan who operates the parking lot in connection

with Brink's place testified that about 2:30 o'clock on the morning of the robbery an automobile entered a parking lot on the opposite side of the road and immediately thereafter he saw appellant cross to Brink's place. He testified that he left the building about 3:55 and noted at the time that appellant was the only customer there; that when he went out into the parking lot he saw some man going out of the building and across the road but could not state whether it was appellant. Brink testified that appellant who was the only customer in the building at that time, left a little before 4 o'clock and within 10 minutes the three masked robbers entered. Their car had also been parked in the lot opposite Brink's place. Appellant admitted that he had been in the penitentiary or reformatory at Pontiac, Ill., for larceny and that he served a term in the penitentiary at San Quentin, Cal., for forgery at the same time Tonan and Pfeiffer were serving terms there; that after he had been paroled Pfeiffer, through his efforts, was paroled to a man in Louisville. Later Tonan was paroled or released and he followed Pfeiffer and appellant to Louisville and to Covington. The record clearly indicates that Tonan and Pfeiffer are confirmed criminals of a dangerous type, but it is unnecessary to go into their criminal record or into that of appellant and his close association with them except in so far as it has a bearing on this case.

Summing up the evidence for the commonwealth, we find it not disputed that appellant's codefendants committed the robbery in the manner charged in the indictment. Appellant was in secret conferences with them shortly before and shortly after the robbery. He remained at Brink's place until all the other customers had gone, and then, according to the evidence and the natural and reasonable inferences arising therefrom, he left, going in the direction of the lot where Pfeiffer and his associates had parked their automobile, and they immediately appeared armed and masked and held up the place. Thereafter he went to the distant city to pawn the ring taken from Mrs. Mack giving an assumed name. In view of these persuasive and convincing facts, the weakness of appellant's attempt to establish an alibi, his attempt to explain his associations with his codefendants and his connection with the pawning of the ring, coupled with evidence of his former convictions which the jury had a right to and no doubt did

consider as bearing on his credibility as a witness, it is easy to understand how the jury reached the conclusion it did. It was its province to determine the credibility of the witnesses and the weight to be given to the evidence and the verdict should not and will not be disturbed, where as in this instance and wholly apart from any evidence of codefendants, there is ample proof of a substantial and persuasive character to sustain the verdict.

In support of the second ground argued for reversal, counsel for appellant cite the case of Miller v. Commonwealth, 78 Ky. 15, 39 Am. Rep. 194, but that case has no application here because, as already indicated, there is sufficient evidence apart from that of any accomplices to sustain the jury's verdict and the rule as laid down in the Miller Case has been greatly relaxed.

In the case of Williams v. Commonwealth, 257 Ky. 175, 77 S. W. (2d) 609, it was held in effect that the corroborating evidence required by section 241 of the Criminal Code of Practice need not be sufficient, standing alone, to establish the guilt of the accused, but that it is only necessary that the corroborating evidence should in a substantial way tend to connect the accused with the commission of the crime, and that has been followed in the more recent cases of Walker v. Commonwealth, 257 Ky. 613, 78 S. W. (2d) 754, and Mills v. Commonwealth, 259 Ky. 666, 83 S. W. (2d) 32.

Concerning the third ground argued for reversal, it may be said without entering into a discussion of the alleged improper remarks of the commonwealth's attorney that the arguments and conduct of counsel in criminal cases cannot be considered on appeal, unless such arguments and conduct and exceptions thereto are shown by a bill of exceptions. Hord v. Commonwealth, 227 Ky. 439, 13 S. W. (2d) 244; Cooley v. Commonwealth, 185 Ky. 142, 214 S. W. 898; Frey v. Commonwealth, 169 Ky. 528, 184 S. W. 896. Here, the alleged improper remarks of the commonwealth's attorney are shown by affidavits in support of the motion for a new trial. Errors based on improper argument cannot be brought up in this way. Bibb v. Commonwealth, 112 S. W. 401, 33 Ky. Law Rep. 726.

Finding in the record no error prejudicial to appellant's rights, the judgment is affirmed.