## Carroll et al. v. Commonwealth.

December 12, 1947.

Watt M. Prichard, Judge.

A. W. Mann and P. H. Vincent for appellants.

Eldon S. Dummit, Attorney General, and H. K. Spear, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE KNIGHT—Affirming.

Appellants Alvin Carroll and Clarence Collins were jointly indicted in the Boyd Circuit Court for breaking and entering the storehouse of Haskel Estep, known as the Rustic Inn, and stealing therefrom articles and property of value. On trial the jury returned a verdict of guilty and fixed their punishment at one year each in the penitentiary. From this verdict and the judgment thereon appellants prosecute this appeal.

In their brief appellants base their plea for reversal on two grounds—first, that appellants were convicted on the uncorroborated testimony of an accomplice; second, that the alibi established by appellants was complete, perfect and constituted an absolute defense. The determination of these two questions will require some examination of the evidence.

### The Proof.

John B. Cooksey, age 21, a brother-in-law of one of the appellants, and nephew by marriage of the other, turned state's evidence and admitted his participation in the robbery with appellants. He testified in sub-

stance that about twelve o'clock on the night of November 13, 1946, he and both appellants went in a cab to the Rustic Inn; that he refused to go into the building as requested by the appellants but remained outside of the upper side of the building; that both appellants went toward the building and after remaining about half an hour returned to where he was and then returned to the building, remaining another half hour. He did not see them actually enter the building. On the first trip appellants brought with them a slot machine and a pistol holster; that they took the slot machine down the road and hid it, he helping to carry a portion of it. They proceeded to take the money from the slot machine, the amount of which he did not know except that he received $30 which was supposed to be one-third of it; that he returned to the home of his mother-in-law, the mother of Clarence Collins, about three o'clock in the morning but he did not know where appellants went or stayed the remainder of the night. Witness admitted he had previously been convicted of a felony. He admitted he had previously made a statement in writing under oath that he alone committed this robbery but later repudiated it; that the reason he made the original statement was because Alvin Carroll, one of the appellants, was to pay him $1,000 for assuming all the blame; that he had over-stayed his leave from the army and would probably be convicted of desertion, and he was willing to have this crime placed on his shoulders if he could get the $1,000 promised him by Alvin Carroll. Not having received it he repudiated his previous statement.

Haskel Estep, the victim of the robbery, in his testimony detailed the robbery on the night of November 13th which took place some time after twelve o'clock midnight, at which time he usually closes; that entrance was gained to the premises through the window of the men's rest room; that the window had been pried open with some sort of tool and removed and was found inside the rest room; that his place was all torn up as though a cyclone had hit it; the music box and pin ball machine had been broken open and the money taken out, and one slot machine had been taken away, along with a pistol holster which had been loaned to him by a highway patrolman.

Edward Strubler, a state highway patrolman, testified that he answered a call to the Rustic Inn on the morning of November 14th, along with Cpl. Vaughan, another member of the highway patrol. They found the place had been broken into by the window being pried loose and removed; that upon investigation they found indications on the frame of the window that it had been pried open by the use of some sort of a tool or chisel; that several days later, on November 21st, they arrested appellants and John B. Cooksey in an automobile at Cannonsburg near the intersection of highways 60 and 186, their arrest being occasioned by the failure to obey a stop sign. Upon a search of their automobile they found quite a number of tools, including a bar like that sometimes used to fasten brake shoes on railroad cars; that this latter tool fitted perfectly into the impressions which they had found on the window and window sill which had been broken; that after the car was taken to a garage, and upon further examination, they found in a sort of pocket, or a hole in the upholstery of the car, a pistol holster which he identified as belonging to officer Vaughan which he learned Vaughan had loaned to Estep. He admitted on cross examination that the tools found in the car could have been those ordinarily used for work on automobiles.

Richard Vaughan, the highway patrolman who answered the call with patrolman Strubler, gave in substance the same testimony as did Strubler about how the entrance was made and the fitting of the tool into the impressions found in the window and window sill. He identified the holster referred to as being his, and testified he had loaned it to Mr. Estep along with a 32 caliber pistol for Estep to keep around the place.

For the defendants, and in order to establish their alibi, the testimony was in substance as follows:

Alvin Carroll testified that his home was in Middleport, Ohio, where he lived with his wife and children; that he was not regularly employed at the time but worked on people's cars, and that is why the kit of tools was in his car when arrested; that he registered, with his codefendant Collins, at the New Liberty Hotel on the morning of November 13, 1946, and left that hotel

about eleven o'clock that morning; that after lunch at the Dinner Box Restaurant, and shortly after three o'clock in the afternoon, he and Collins went to Huntington by bus, arriving at his sister's house in that city at about the time school got out; his sister came home about five o'clock and he and Collins, Glen Taylor and Nell Collins and his mother and sister went to the Pony Restaurant for food and drink and remained there until about ten o'clock; that a fight at that place closed the Pony Restaurant and they proceeded to another restaurant where they remained until it closed about midnight, after which they went to his sister's house, taking with them a case of beer, and that they all sat around and played rummy until about 2:30 in the morning when the party broke up and he slept at his sister's house the remainder of the night. This was the night which the Rustic Inn was robbed, and he denied being in Ashland or anywhere with John B. Cooksey that night, or having any part in the breaking and entering of the Rustic Inn. On cross examination Carroll admitted he had previously been convicted of felonies seven times, all at one term of court, for breaking and entering. That was back in 1940. He denied promising John B. Cooksey $1,000 to assume all the blame for the robbery.

Clarence Collins, 18 years of age, testified that he left Ashland about four o'clock on November 13, 1946, the day of the robbery, and arrived in Huntington, West Virginia, about the time school was out, and went direct to the home of his aunt, Alvin Carroll's sister; that he, Carroll, his sister and others referred to in Carroll's testimony, went to the Pony Restaurant where they remained until about ten o'clock, after which they went to a place called Lambert's where they remained until about twelve o'clock, after which they went to his aunt's house where they remained until about two o'clock, where he and Carroll went to bed about two-thirty and remained until they awoke in the early morning following. He denied having any part in the breaking in and entering of Rustic Inn on the night of the 13th or morning of the 14th.

Euphomia Turner of Huntington, mother of Alvin Carroll, and grandmother of Clarence Collins, Myrtle Bayless, sister of Alvin Carroll and aunt of Clarence

Collins, Laura Lemon, Glen Taylor and Stella Ritchie, all of Huntington, none related to appellants, corroborated the testimony of the two appellants as to their presence in Huntington, West Virginia on the evening of November 13th and the morning of the 14th, and corroborated their testimony as to the fight at the Pony Restaurant and the subsequent visit to another restaurant, the leaving of the latter place about midnight, their presence at the home of Myrtle Bayless until about two-thirty on the morning of the 14th.

To combat the alibi testimony of appellants, the Commonwealth introduced M. S. Black who was employed at the New Liberty Hotel in Ashland during the month of November 1946. He testified that about 5:30 on the morning of the 13th appellants came to his hotel and registered and went to bed. He did not know when they left; that Collins had registered there a number of times before but it was the first time Carroll had been there.

Hubert Cooksey, father of John B. Cooksey, who was employed at the New Liberty Hotel during the month of November 1946, testified from the hotel register that Alvin Carroll and Clarence Collins were registered at that hotel on the 13th; that he checked them out about eleven or eleven-thirty on the same day and that Collins checked back in about three o'clock and checked out the next morning, the 14th, at eight-thirty.

An important point in the case is the possession of the pistol holster, and on this point there is conflict in the testimony. Appellants gave conflicting accounts of their possession of the holster. Collins testified he bought it from John B. Cooksey for $2, which Cooksey denied. Patrolman Strubler testified that upon separate questioning of appellants Carroll stated that he had brought the holster from Germany, while Collins stated on separate examination that he had bought it on 15th street in Ashland from an unknown party. Corporal Vaughan testified that Carroll told him he brought it from Germany but made no further statement when shown that it bore the trade mark "made in U. S." and that Collins in his separate statement had said he had bought it on 15th street from an unknown man. Squire Hedrick testified that Collins in his examining trial

under oath had stated that he had bought it from an unknown man on 15th street, and Carroll in his examining trial testified that he had brought it from Germany.

To rebut the testimony as to the fight at Pony's Restaurant in Huntington, Anzel T. Bryant, chief of detectives of Huntington, testified that in the records of the police department there was nothing to show that there had been a fight and general disturbance at the Pony Restaurant in Huntington on the night in question.

## Was Accomplice Corroborated?

From the proof thus summarized is there sufficient testimony to corroborate the testimony of the admitted accomplice, John B. Cooksey, as required by section 241 of the Criminal Code to sustain a conviction? We are of the opinion that this question must be answered in the affirmative. The corroborating testimony required by section 241 of the Criminal Code of Practice need not be sufficient standing alone to establish the defendant's guilt of the offense charged, but it is only necessary that it shall, in a substantial way, tend to connect the accused with the commission of the crime and thus corroborate the testimony of the accomplice. It is sufficient if such evidence tends to corroborate accomplice. Mills v. Commonwealth, 259 Ky. 666, 83 S. W. 2d 32, and Alexander v. Commonwealth, 262 Ky. 93, 89 S. W. 2d 867. See also Williams v. Commonwealth, 257 Ky. 175, 77 S. W. 2d 609, where the authorities were exhaustively reviewed and the rule for determining the sufficiency of the corroborating testimony within the meaning of section 241 of the Criminal Code was fully set out. We have held that circumstantial evidence may furnish the necessary corroboration of an accomplice contemplated by section 241 of the Criminal Code. Mattingly v. Commonwealth, 195 Ky. 838, 243 S. W. 1044. It is well settled in this jurisdiction that possession of some of the stolen property constitutes sufficient corroboration of the testimony of an accomplice to take the case to the jury. Taylor v. Commonwealth, 248 Ky. 277, 58 S. W. 2d 360, and cases therein cited.

We think the testimony concerning the pistol holster, the unsatisfactory and conflicting testimony given by appellants as to their acquisition of it when found

in their possession, and that concerning the fitting of the tool found in possession of appellants with the depression or marks made on the window sill and frame, constitutes sufficient evidence, circumstantial though it may be, if believed by the jury, as it appears to have been, to have warranted the verdict of the properly instructed jury.

## The Alibi.

The evidence introduced by appellants to sustain their alibi tended strongly to prove they were not in Ashland on the night of the robbery but were in Huntington. However, this testimony was given by relatives and close friends of appellants and there was evidence to the contrary. The jury is the tribunal to try the issues of fact and it could, and apparently did, accept the testimony of the Commonwealth and reject that of the defendants. Credibility of the witnesses is exclusively for the determination of the jury and this court will not disturb its decision on issues of fact when properly instructed, against which latter point there is no complaint in this case. Little v. Commonwealth, 242 Ky. 247, 46 S. W. 2d 97, and cases therein cited.

## Conclusion.

After a careful consideration of the whole case we are of the opinion that the minimum sentence of one year meted out by the jury to appellants was justified by the evidence and that no reversible error was committed in the trial of the case. The judgment of the lower court is therefore affirmed.