## Etherton v. Commonwealth.

(Decided Dec. 16, 1932.)

554

GARDNER & McDONALD for appellant.

BAILEY P. WOOTTON, Attorney General, and H. HAMILTON RICE, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY HOBSON, COMMISSIONER— Reversing.

Burr Etherton and his son-in-law Ernest Watts were indicted in the Graves circuit court for the will-

ful murder of Ira Graviett. Etherton was placed on trial; he was found guilty of voluntary manslaughter and his punishment fixed at eight years' imprisonment. He appeals.

Etherton was living with his son-in-law in Graves county. A neighborhood picnic or dance was given on June 29, 1930, near the home of Watts, and quite a crowd attended. While the dance was going on, about midnight, a fight occurred between Richard Boaz and Dock Mason near the dance ground. Ernest Watts and Chance Graviett, who was a brother of Ira Graviett, were dancing. Ernest Watts went up to Chance Graviett and spoke to him about the fight. Chance Graviett answered with an oath, and thereupon Ernest Watts struck him. A struggle ensued, and when they were separated Ernest Watts went to his father-in-law, Burr Etherton, to borrow his pistol. Etherton was standing outside of the dancing ground and near the corner, between it and the road, and declined to give Watts the pistol. Ira Graviett was inside of the dancing ground with his wife, but near the other corner. She urged him to go home. He declined. The proof is conflicting as to what occurred. The proof for the commonwealth, briefly put, was this:

Watts knocked Chance Graviett's hat off; ran backwards with his hand in his pocket, and said "I am going to put you where the dogs can't lick you." He went around to Etherton and asked him to give him his gun, and Etherton said: "I have got this gun myself." Watts said: "Give it to me, by God you won't do nothing." Etherton said: "Yes, by God I will stop them, I will get the son-of-a-bitch." So Ira Graviett walked around and asked Etherton what he was going to do with that gun, and Watts said, "Shoot him." Ira Graviett held out his hands and said: "See, I an't got nothing, what are you going to do with that gun?" Watts said, "Shoot him," as many as three or four times. Etherton threw the gun up, and when he did that Ira Graviett reached out to strike his arm and knocked it down, and when he knocked it down Etherton shot him in the stomach. As soon as Etherton shot Ira Graviett, Chance Graviett ran in and caught Etherton and went to the ground with him, and was trying to take the pistol away from him when Watts got a chair and knocked, Chance Graviett down and he was unconscious for some minutes.

On the other hand, the proof for the defendant was, in substance, this: He had not gone to the picnic when it started, but had walked down later in the evening to see what was going on, and had taken no part in anything that had occurred. After he got there, Ira Graviett came up to the stand, mad and cursing; he had his knife in his hand and hit the stand and said: "Let them fight, the whole God damn world fight." His wife tried to get him to go home. He, with an oath, refused to go and swung from her facing Etherton, and about twelve or fifteen feet from him, and said: "You God damn son-of-a-bitch there ain't nothing to you." As he said this, he advanced on Etherton, and Etherton then said, "Ira don't crowd me." He had his pistol in his pocket but had not drawn it. Graviett had his knife in his hand, and when he got near to Etherton, Etherton backed off. He backed something like fifteen or twenty feet, and when he got in the edge of the road he stepped in the ditch and fell to his knees. Graviett then advanced on him with his knife and he shot him. He makes these questions and answers:

"Q. When did you take the pistol out of your pocket? A. When I knelt when I fell I came out with the gun.

"Q. Where was Chance Graviett? A. He was advancing with a coca cola bottle.

"Q. Did he ever hit at you? A. He hit me one lick. * * *

"Q. How come you to shoot Ira Graviett when you shot him? A. To keep him from killing me, to protect myself."

The court gave the jury the usual self-defense instruction, telling them in substance to find the defendant not guilty if they believed, and had reasonable ground to believe, that he was in danger of death or some great bodily harm at the hands of Ira Graviett. It is earnestly insisted for the appellant that the instruction was erroneous and that the court should have instructed the jury as indicated in the case of Buttery v. Com., 211 Ky. 23, 276 S. W. 969, 970, where, condemning a similar instruction, the court said:

"The instruction in this case only gave to the appellant the benefit of self-defense if he was, or believed he was, at the time in danger of death, or

the infliction of great bodily harm, at the hands of Shelby Marcum, and did not embrace those then present and acting in concert with him.''

The proof in this case is more like the proof in Simpson v. Commonwealth, 245 Ky. 202, 53 S. W. (2d) 364, decided October 7, 1932, where a like objection was urged and was held unavailing upon the ground that the evidence of the appellant himself showed that at the time he shot he apprehended peril only at the hands of the decedent. The evidence of the defendant here does not show any facts warranting him in concluding that when he shot he was in danger at the hands of Chance Graviett. There had been no words between them and there had been no previous ill feeling. The trouble had been entirely between Chance Graviett and Watts and had grown out of what Graviett considered an improper view that Watts had taken of the difficulty between Boaz and Mason. His own testimony does not show that Chance Graviett had done anything of a hostile character to Etherton before Etherton shot Ira Graviett, and the evidence, as a whole, makes it perfectly clear that Chance Graviett did nothing until after his brother was shot. The statute provides that a judgment of conviction shall not be reversed for any error on the trial, unless upon the whole case it was prejudicial to the substantial rights of the defendant. Upon the whole case here the court is clearly of the opinion that if the instruction, worded as appellant now says it should have been worded, had been given, it could have had no effect whatever on the result of the trial under the proof.

Appellant insists that the court erred in the following rulings on the admission of evidence and other objections:

The court admitted evidence as to the fight between Boaz and Mason and the fight between Ernest Watts and Chance Graviett. But these occurred on the ground there and led up to the difficulty between Ira Graviett and Etherton; one followed practically on the other within a few minutes. The details were not shown but only the fact of the fighting, and without this what followed could not be properly understood. The facts were properly admitted.

Louis Graviett stated that when Watts asked Etherton for the pistol, Ira Graviett and Etherton

were making right at each other and then there was this question and answer:

"Q. Will you describe the appearance of Burr Etherton at that time? A. He looked pretty vigorous."

The defendant's objection to this question and answer should have been sustained. The witness stated nothing said or done by Etherton, but only an opinion.

This witness was allowed to state that Watts was drunk. This was a fact throwing light on his conduct and what his intentions were, and was properly admitted.

He was then asked if Etherton was drunk, and answered: "Burr Etherton stayed full all the time nearly." The defendant's objection to this should have been sustained. He showed he was sober then and his habit as to being often full was immaterial.

Etherton on cross-examination was asked if he didn't leave Carlisle county last year because they had a warrant for him and he was indicted in that county. He answered in the negative and his objection to the questions should have been sustained. He was also asked like questions as to Hickman county, and these matters were much brought before the jury. All of this was improper and should not have been admitted. Character may not be attacked by proof of long-past specific acts. The same rule applies to the testimony of James Lee as to what the defendant did when arrested by him years before the homicide.

Ernest Watts was asked on cross-examination if he didn't usually arm himself. The defendant's objection to this should have been sustained. Watts was not on trial and proof of his habits were not competent.

Mrs. Ernest Watts was asked on cross-examination if Etherton didn't hit her husband's brother on the head with a pistol, and there was other evidence of Mrs. Jack Gore as to what happened at Watts' home after they came back from the dance about 1:00 a. m. All this evidence should have been excluded. It was in no way connected with the homicide. The same rule applies to the testimony of Leon Hamby as to what Watts told him about wanting to get the whisky away from his house the next morning; what

then occurred had no connection with the homicide and threw no light upon it.

Jerry Rhorer, a witness for the defendant, was permitted to state on cross-examination that some time after the killing the defendant came across the field where he and Chance Graviett and another person were with a rifle, but said and did nothing. All this should have been excluded. It threw no light on the homicide. Based on this evidence, the commonwealth attorney in his closing speech to the jury said this:

> "It cropped out in the evidence that this hungry looking Burr Etherton was tramping over the fields after he had killed Ira Graviett with a rifle in his hands, and that Graviett's folks came up to the courthouse to have him put under a peace bond to keep him from killing them. That he didn't give a damn how many widows and orphans he made; that this saintly man, who is on trial, is the same person who lets the City of Detroit look after his Children. To which statements the defendant objected at the time and moved the court to admonish the jury not to consider said statements, which the court refused to do and the defendant excepts."

This should have been excluded.

Lee Franklin was allowed to state that the day before the killing Ernest Watts had whisky. This was immaterial. Watts was not on trial and it threw no light on the homicide.

Ida Handley, a witness for the defendant, impeached the testimony of a witness for the commonwealth and was asked on cross-examination if her feelings toward Ira Graviett were good. She said, in answer to further questions by the commonwealth attorney, that they were not good and that she had not spoken to him since he was tried for an offense twelve years ago. Then this followed:

> "Q. Did you testify in that case? A. Yes, sir.
>
> "Q. The Court of Appeals talked about your testimony didn't they? A. I don't know anything about the Court of Appeals, I wasn't there. Objections and exceptions."

The defendant later asked to read to the jury the opinion referred to and the court properly refused to allow this, but the question should not have been

asked and the objection to it should have been sustained. As to this witness, in his closing speech to the jury the commonwealth attorney said this:

> "The witness, Ida Handley testified voluntarily and against all the rules of law, about a conviction of Ira Graviett twelve years ago, and I asked the court to admonish the jury not to consider it, and the defendant's lawyer ought to have agreed to it and the court ought not to have permitted the jury to have heard this evidence and ought not to have permitted the defendant's attorney to have referred to her testimony in his argument about Graviett having been convicted twelve years ago for a crime they hang negroes for. I happened to be the attorney who tried the former case against Graviett and I am here to tell you Ira Graviett was every inch a man."

> "To all of which the defendant objected at the time and moved the court to exclude said argument and to admonish the jury not to consider same, which the court refused to do, and the defendant excepts."

All of this should have been omitted.

Shott Clapp, a witness for the state, in rebuttal, was asked if on his way to the dance he did not see Etherton call Ira Graviett off and talk to him and answered: "I think he did. I would not swear to that." The court should have sustained the defendant's objection to this. A case must be tried on what the witnesses testify to, not what they think. This was important, for it tended to contradict the testimony of the defendant as to threats the deceased had made against him and the state of feelings between them.

Mrs. Ira Graviett was allowed in rebuttal to state that a few days before the difficulty the defendant came to her house and got some gun shells. The defendant's objection to this evidence should have been sustained. The gun shells played no part in what followed or in the homicide.

The questions asked Alma Etherton, defendant's eighteen year old daughter, on cross-examination by the commonwealth attorney, to which the court sustained the defendant's objections, should not have been asked. Her character, as a witness, may not be impeached in this way, and the cross-examination as

to her trip to Detroit, who paid her expenses to Kentucky, or how many children her mother had, should have been omitted.

To contradict one of defendant's witnesses, after laying the proper foundation, the state called the stenographer who had taken the testimony of the witness on the examining trial and proved by her that the witness had so answered the question. This the witness had denied. Defendant then moved the court to read to the jury other questions and answers in the stenographer's transcript to show what the witness really had testified to. The commonwealth attorney objected and a long wrangle ensued. The court allowed the defendant to read the other questions and answers he asked to read. Then this followed; Mr. Martin being the commonwealth attorney, and Mr. Gardner the defendant's attorney:

"Mr. Martin: I enter a motion that she read the whole durn record and get it in the record.

"Mr. Gardner: We object to that remark. Is the court going to hold this is not a court of records?

"The court: No.

"Mr. Gardner: We object to that remark.

"Mr. Martin: Here is the whole evidence or a copy of it.

"The court: That will be overruled.

"Mr. Martin: I don't see why when I asked the specific questions and contradicted her and then permit her to come back and read the whole record.

"Mr. Gardner: I move the court to discharge the jury and continue the case. Overruled, exceptions.

"The court: Gentlemen, you are trying the case on the evidence and not on the demeanor of the lawyers.

"Mr. Brooks: The commonwealth moves to exclude the testimony of the witness insofar as it related to the testimony of Mrs. Watts about which the commonwealth did not lay the basis for contradiction because Mrs. Ernest Watts was the only witness that was qualified to testify about those facts and except to the ruling of the court.

"Mr. Martin: If Judge Gardner will permit me I will put on another witness.

"Mr. Gardner: I object to that remark.

"Mr. Martin: Call her on and ask her, I am not going to ask her anything; I can't do anything to suit Judge Gardner and I will just quit the case.

"Mr. Gardner: I object and move that the jury be discharged. Overruled, exceptions."

In his closing argument to the jury the commonwealth attorney said this:

"I brought Judge Gardner's stenographer to testify as to statements made by Mrs. Sonk Watts on the examining trial different from those made by her in this trial and after I had done that Judge Gardner wanted her to read other answers made by her, and I didn't think the court had any right to let her answer the questions and read these answers, and I still don't think so, but the court let him ask her these questions and now he brings Mrs. Ida Watts upon the stand to prove that Mrs. Sonk Watts is sick. She is sick, but she is sick because she come up here and swore what wasn't so, and she is ashamed because she did do, and is now sick at heart. The defendant objected to said argument and moved the court not to consider same, and the court refused and the defendant excepted."

The conduct of the commonwealth attorney, and what he said in the presence of the jury, tended to impress the jury with the conclusion that in his judgment the commonwealth was not getting a fair trial and may have tended to prevent the defendant from having a fair and impartial trial. It was clearly improper for him to go out of the record and tell the jury, in substance, that the witness was not sick, but knew she had sworn falsely. A leading question may be asked on cross-examination, but leading or suggestive questions should not be asked on the direct examination of a witness, and when they are objected to the objections should be sustained by the court.

When a witness testifies to the good character of a party, he may be asked if he has not heard that the party had done this or that; but proof may not be made

564

by other witnesses in rebuttal that the party had done the things in queston.

While some of the above matters were not important, the court concludes that on the whole case the defendant did not receive a fair trial and that his substantial rights were prejudiced in view of all the facts. All other questions are reserved.

Judgment reversed, and cause remanded for a new trial.