## Muncy v. Commonwealth.

(Decided Oct. 23, 1936.)

C. W. NAPIER and NAPIER & NAPIER for appellant.

B. M. VINCENT, Attorney General, and J. J. LEARY, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER— Affirming.

The appellant and four others were indicted by the grand jury of the Perry circuit court for the malicious shooting and wounding of Ralph Peters. Upon a separate trial appellant was found guilty, and his punishment fixed at two years' imprisonment in the penitentiary.

On his appeal it is contended that the verdict was flagrantly against the evidence; that the court erred in refusing to sustain appellant's motion for a directed verdict of not guilty; in failing to instruct on the whole law, because of the lack of an instruction on self-defense, and on what are said to be lesser degrees of the offense denounced by section 1166, Ky. Stats., under which the indictment was returned. The questions presented require a more or less detailed review of the facts.

On the night of and prior to the shooting a Mrs. Jennings was called to a mining camp at Allais, not far distant from Hazard, in connection with some undisclosed difficulty involving her son. Peters, a Hazard policeman, at the time in uniform, together with other law officers had gone to the mining camp in answer to what they said was an official call, ostensibly in connection with Mrs. Jennings' trouble. About 9 p. m. Mrs. Jennings started back to Hazard in her car. As she neared the point where the roadway from the mining camp entered the main highway to Hazard she noticed a Ford coupe in front of her, which slowed down near the Hazard highway. This car obstructed her passage and she stopped; the other car then started, and as it got to the highway it again slowed up, the driver seemingly uncertain as to whether he would take the highway toward Combs or Hazard. The driver after a time turned the coupe toward Hazard and Mrs. Jennings followed. She says the car in front was "zig-zagging" from one side of the road to the other. The coupe had not gone far on the Hazard road when it again stopped or slowed down, and with some difficulty she passed. Appellant and his companions were admittedly in the

coupe, three persons in the driver's seat and two in the rumble.

Peters, the officer who was shot, and his party were following in their car close behind the Jennings' car. They saw the coupe stop in the lane and noted the peculiar way in which it was traveling. Shortly after Mrs. Jennings' car had passed, Peters' car came up to the coupe and stopped, believing the driver of the coupe to be in trouble, as one witness says, and as another stated, for purpose of arresting the driver for faulty driving. Peters says their car stopped while the coupe was at a standstill, or nearly so; he got out of his car on the right side and Davis, a fellow officer, got out on the left. Peters advanced to the coupe on its left side and stepped on its running board (Davis following behind him), and flashing a light called to its occupants to "wait a minute." He says that then the passenger on the right side in the rumble seat drew a pistol and shot him, and as he endeavored to hold his place on the running board, snapped the pistol twice. Peters fell in the highway and was later attended by his associates. The coupe then sped on toward Hazard. Davis fired four shots from a .38 special toward the moving car.

The bullet which struck Peters entered the hip just below the waist line, ranged forward and deflected by the hip bone, lodged near the lower end of the spinal column. According to the testimony of the attending physician the wound showed that it had been made by either a .44 or .45 caliber bullet, and powder burns indicated a shot at close range. Neither Peters nor Davis could say definitely who fired the shot, but both insist that it was fired by the person sitting on the right in the rumble seat. Peters says that after the shot which struck him was fired, some one in the car said "shoot him again," and the pistol snapped twice. Peters was on the left side of the coupe, but insists that the man on the right side "leaned over the man on the left, right in his lap" and fired.

Davis testifies that when Peters got on the running board of the coupe "there were two fellows on the back seat, in the rumble, and the man on the right hand side laid leaning way over him in front and shot Peters."

Soon after the shooting, Feltner and Baker, peace officers, arrested appellant and Joseph while still in their car going toward Leslie county. They found two

pistols, one a .45 and the other a .32-20. The .45 had one empty shell, which they say had been recently fired, and two cartridges showing that they had been snapped. Feltner says that he had seen the .45 prior to that time in the possession of appellant's grandfather. Baker, who assisted in the arrest, says that when the arrest was made "we saw two of the boys slipping some guns under the front seat." The .45 delivered at once to the county sheriff, was produced on the trial and identified as the one found in the coupe.

Appellant and his companions testified, admitting that in coming from the mining camp their car did "zig-zag," but say this was due to some trouble in the mechanism of the car. However, they say that when they stopped or slowed up to allow Mrs. Jennings to pass, the car in which Peters and his fellow officers were riding, stopped and some one got out, came to their car and immediately there began a firing from the rear by one in company with Peters. All of the occupants of the coupe insist that no shot was fired from their car, but that all the shooting was by some one in the officer's crowd. They say that as soon as this shooting began they did speed up the car in an effort to get away.

Appellant admits that he had a .45 pistol which his uncle had borrowed from his grandfather, and which at his uncle's request he was returning, but denied that he shot Peters or snapped the pistol at him, or fired at all. His version of the shooting is to the effect that "some fellow jumped on the side of the car, and the shooting began from the rear"; the first shot was fired from behind the car just as the "fellow jumped on," and at the first shot the fellow jumped off or fell off. He says that immediately there were three or four shots fired in rapid succession. He also says that he did not fire or snap the pistol at any time that night, and that it was not in a condition showing firing or snapping when the officers got possession of it. Appellant admits that at the time of the shooting he was on the right in the rumble seat and Joseph on the left. Joseph testifies as appellant; in fact, all the witnesses who were in the car testified that no shot came from the coupe, they insisting with one accord that the shot which struck Peters came from some one in the crowd with Peters, the implication being that Davis, who admittedly shot three or four times, was responsible for the shooting.

Under this state of facts the court 'gave the usual and approved instructions on all words of technical meaning used in the instructions; one on reasonable doubt on the whole case and on the duty of the jury, in case they should find guilt under various instructions as to lesser degrees than the one for which appellant was indicted.' Instruction No. 2 was in the language of section 1166 Ky. Stats., under which the indictment was returned, and No. 3 on shooting and wounding in sudden heat and passion.

Counsel in argument complains that the court erred in not sustaining his motion for a peremptory, and that the verdict of the jury is flagrantly against the evidence, both of which contentions may be treated together

There is no argument but that Peters was shot at the time and place in question. Peters says without a doubt that the person on the right side of the rumble seat was the man who shot him. Davis says the same thing, though he says he believed that the man who was on that side was Minnaird. Peters testifies that he had heard the appellant admit that he was the one on the right. Peters was shot with a .44 or .45 according to the testimony of the physician. Davis, who was shown to have been experienced in the use of firearms, was using a .38 special at the time and he and Peters agree that he did not fire that pistol until after the first shot came from the car, and from a pistol in the hands of the man on the right. Peters was on the running board; Davis on the ground. The shot which struck Peters ranged straight across the hip portion of his body, which would have been unlikely if he was above Davis on the running board of the coupe. There were powder burns on Peters' body showing, as was in evidence, that the shot was at close range. Davis was several feet behind the coupe. Other evidence might be pointed out which would be sufficient to incriminate appellant. Omitting his statements, for the purpose of testing the question of a peremptory, we are of the opinion that the court properly overruled his motion. It follows when we include in our consideration of the question the admissions of appellant, that the verdict is not flagrantly against the evidence. When there is any substantial proof to support the verdict, this court will not disturb it—the jury being the sole judge of the weight and credibility. Alexander v. Com., 262 Ky. 93, 89 S. W. (2d) 867.

Counsel for appellant contends that the court erred to his prejudice by failure to give (1) an instruction based on section 1308, Ky. Stats., which makes it a misdemeanor to draw, point, or flourish a deadly weapon on a public highway; (2) on assault and battery; and (3) on self-defense. It is contended that the offense denounced by section 1308, Ky. Stats. is a lesser degree of the offense denounced in section 1166, the latter being unquestionably the section under which the indictment was returned. In support, counsel cites two cases, Hall v. Com., 219 Ky. 446, 293 S. W. 961; Crabtree v. Com., 227 Ky. 65, 11 S. W. (2d) 1000. However, a reading of these cases does not bear out his contention, since in neither of the cases was there a wounding of the person; the shooting was admitted, and there was no proof from which to infer malice. Here there was a vigorous denial of any shooting whatever by appellant or any of his companions. We have a case where the accused was indicted solely for the offense denounced by section 1166, Ky. Stats., and it was sufficient to instruct in the language of that section, of course coupled with an instruction under 1242, Ky. Stats., shooting at and wounding in sudden affray, without malice. See cases cited in Caldwell v. Com., 265 Ky. 402, — S. W. (2d) — , decided October 2, 1936. Instructions are only to be given as to matters about which there is an issue or possible issue. Luttrell v. Com., 250 Ky. 334, 63 S. W. (2d) 292. The argument that the court should have given an instruction on assault and battery is completely refuted in Lewis v. Com., 156 Ky. 336, 160 S. W. 1061, and in Noral v. Com., 202 Ky. 318, 259 S. W. 706, 707, in which the same contention was made, the court said:

"But it is difficult to understand how one who shoots with a deadly weapon at another could only be guilty of an assault or a breach of the peace. The two sections [1166 and 1242], as applied to shooting, appear to be exclusive, and to cover the whole field.

"He either shot maliciously as denounced by section 1166, or he shot in sudden affray without previous malice, as covered by section 1242; he could not have been guilty of a mere common assault or a breach of the peace by the act of shooting at another with deadly firearms."

There is no ground at all upon which a self-defense

instruction should have been given. The testimony of appellant, backed by that of his companions, is altogether to the effect that no shot was fired, the defensive implication being that Davis fired the shot. There was no claim by appellant of defense of himself or any one in the party. No instruction should be given upon a defense which is not supported by some evidence, or at least a version or theory which would justify its being given. Pergram v. Com., 242 Ky. 465, 46 S. W. (2d) 780.

It is complained that instruction No. 3 given under section 1242, Ky. Stats., and relating to the shooting in sudden affray, used the word willfully, whereas the statute does not condemn ''wilfully'' shooting another in sudden affray. The law is that in order to find one guilty under section 1242 the jury is to believe the shooting and wounding was in sudden affray and without previous malice. The word ''wilful'' in its general acceptation means intentionally, not accidently nor involuntarily. This instruction was favorable to the defendant. He was not found guilty under the instruction, as will be observed from the difference in the penalties fixed under sections 1166 and 1242. We have often held that an instruction which required a jury to find the existence of an additional element not set up in the statute denouncing the offense is not prejudicial. Hays v. Com., 211 Ky. 716, 277 S. W. 1004; Baker v. Com., 219 Ky. 834, 294 S. W. 790, and Wooten v. Com., 245 Ky. 266, 53 S. W. (2d) 557.

On the whole case, after a careful review of the record, we fail to find any error prejudicial to the substantial rights of accused.

Judgment affirmed.