Ralph Stephen BAZE, Jr.,
Appellant/Cross–
Appellee,

v.

COMMONWEALTH of Kentucky,
Appellee/Cross–Appellant.

Nos. 94–SC–127–MR, 94–SC–627–MR.

Supreme Court of Kentucky.

March 27, 1997.

As Modified on Denial of Rehearing
Nov. 20, 1997.

Larry H. Marshall, Marie Allison, Assistant Public Advocates, Department of Public Advocacy, Frankfort, for Appellant/Cross–Appellee.

A.B. Chandler, III, Attorney General, David A. Smith, Assistant Attorney General, Paul D. Gilbert, Assistant Attorney General, Criminal Appellate Division, Frankfort, for Appellee/Cross–Appellant.

WINTERSHEIMER, Justice.

Ralph Baze appeals from a judgment based on a jury verdict which convicted him of the double murder of two police officers, Sheriff Steve Bennett and Deputy Sheriff Arthur Briscoe. He was sentenced to death for the murders.

Baze shot each of the officers three times in the back with an SKS assault rifle at a time when the officers were attempting to serve five felony fugitive warrants from Ohio on him. Sheriff Bennett was killed first when Baze shot him three times in the back from the cover of a large stump and brush pile near his secluded cabin. Baze then turned his attention toward Deputy Briscoe. Briscoe was pinned down by the semi-automatic rifle fire from Baze, and the officer crouched down and returned fire from across the hood of the police cruiser. Briscoe fired two full clips from his 9 mm. pistol as Baze was walking towards him firing from his 35 round banana clip as he proceeded. With his weapon empty, Deputy Briscoe turned and tried to run away. Before he could run ten feet, he was shot in the back twice. Baze pursued the officer, stood over him and fired his rifle into the back of the Deputy Sheriff's head.

Baze told police after his arrest, "I shot him in the back of the head. I understand I was killing the man. There was no doubt in my mind." Later, he voluntarily admitted, "You tell them that you have got the right man. I'm the one that killed them son of a bitches."

Sheriff Bennett and Deputy Briscoe were seeking Baze in order to serve fugitive war-

rants from Ohio on the twice convicted felon. The Ohio warrants were for felonious assault of a police officer with a deadly weapon, bail jumping, receiving stolen property and flagrant nonsupport.

Baze knew that Kentucky police were looking for him on the Ohio charges because the Sheriff and other officers went to his rural cabin and spoke to his wife in an effort to locate him. Baze went to Ohio for two weeks in the beginning of mid-January 1992. His wife had telephoned him in Ohio to warn him that "they had been looking for him, and, that Steve Bennett read me the warrants." Baze purchased an assault rifle and ammunition while in Ohio and returned to Kentucky on January 28 with the rifle. Baze testified that he was intending to leave to go to Florida. About mid-day on January 30, 1992, Deputy Briscoe drove to the Baze cabin. Baze was hiding inside the cabin and his wife told the Deputy that he was not home. A number of relatives were both inside and outside the cabin. Although he tried to escape through a trap door in the bedroom floor, Baze was ultimately confronted by the Deputy who showed him a list of the Ohio charges. Baze refused to be taken into custody because he said he did not want the inconvenience of having to wait eight months for his case to go to court. Briscoe left to get help. Baze then crossed the road and positioned himself behind the cover of a large stump and brush pile behind where the officers would park their cruisers if they returned. When they did return, Baze's wife walked out in front of the cabin and hollered at the officers, drawing their attention. Baze was behind them on the high ground with cover and the sun at his back and his SKS assault rifle. Baze fired at the officers while Sheriff Bennett was looking away in the opposite direction.

After he killed both officers, Baze picked up the empty pistol from the Deputy and removed the Sheriff's unfired revolver and put both of the side arms into his own blue bag. He then went into the woods and headed towards Estill County. Shortly after 8 p.m., Baze surrendered without incident at the home of former Estill County Sheriff Monty Parks. Sgt. Miller of the Irvine po-

lice arrested Baze and read the *Miranda* rights to him. Baze, without being questioned, told one of the arresting officers, "You tell them that you got the right man. I'm the one that killed them son of a bitches." Later, Baze confessed to Detective Patterson, Trooper Blevins and Richard Wilson of the Courier–Journal in a series of statements on January 30 and in February, 1992.

The trial lasted three weeks, from November 29, 1993 until December 20, 1993. Baze admitted that he had shot the officers but said it was done in self-defense and under the influence of extreme emotional disturbance. At the conclusion of the guilt phase, the jury deliberated three days. Following the guilt phase, the jury deliberated two days in the penalty phase to fix a sentence of death.

Baze, through appellate counsel, raises 35 assignments of error in this appeal. We have carefully reviewed all the issues presented by Baze and this opinion will concentrate on those questions which we believe are necessary to the resolution of this case. Allegations which we consider to be without merit, will not be specifically addressed here.

### Right to Present a Defense

Baze argues that the trial court totally interfered with his right to present a defense. Baze claimed that he killed the two officers in self-defense and that his actions were inextricably interwoven with his in-laws' family feud which contributed to his extreme emotional disturbance.

■ The trial judge limited the amount of testimony regarding the family feud and excluded direct evidence of the feud because it did not directly involve Baze and the two police officers who were killed. The remainder of the feud evidence was allowed in by avowal. Baze contends that this ruling was erroneous and bases his argument on a statement in *McClellan v. Commonwealth*, Ky., 715 S.W.2d 464 (1986), *cert. denied*, 479 U.S. 1057, 107 S.Ct. 935, 93 L.Ed.2d 986 (1987), to the effect that "the commentary to KRS 507.030 explains that a reasonable explanation of extreme emotional disturbance is not limited to specific acts of provocation by the

victim but may relate to any circumstance that could reasonably cause an extreme emotional disturbance."

Baze maintained that his family had been harassing him and his wife and that he had just gotten tired of being harassed by them. An analysis of the voluminous arguments relative to the family feud indicates that the feud did not involve Baze directly but rather his in-laws and his wife. In any event, the feud did not involve the murder victims. The trial judge correctly concluded that the details of the family feud were not relevant to the killings on January 30, 1992. The trial judge spent a considerable amount of time explaining why he was limiting the amount of evidence about a family feud that could be presented to the jury. Baze's daughter even testified that the feud did not involve Ralph Baze against any of his relatives and it was only "little stuff" between the kids fighting.

■ The presentation of evidence and the scope and duration of cross-examination is within the sound discretion of the trial judge. *Moore v. Commonwealth,* Ky., 771 S.W.2d 34 (1988). Here the trial judge did not abuse his discretion by limiting the amount of feud evidence presented to the jury. The constitutional rights of the defendant were not violated in any way.

### Admonition

■ Baze contends that an admonition to the effect that his testimony was "legally irrelevant to support his defenses" was improper. Early in the trial, the trial judge admonished the jury that Baze's belief and action were "legally irrelevant" to support his defenses of self-protection and extreme emotional disturbance. Baze argues that he testified in his own defense, but that he was not given an opportunity to explain because the court told the jury that everything Baze stated was "legally irrelevant."

Baze was not denied the right to present a defense or a meaningful opportunity to present his defense as stated in *Crane v. Kentucky,* 476 U.S. 683, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986). Baze was not denied his right to explain. He had sufficient opportunity to deny or explain all of the evidence

against him. He was not denied his fundamental right to due process. *Simmons v. South Carolina,* 512 U.S. 154, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994), which does not allow the execution of a person on the basis of information which he had no opportunity to deny or explain was not violated.

Baze testified that he first resisted Deputy Briscoe's attempts to arrest him on the Ohio charges because (1) Baze did not believe there were any such charges, and (2) Briscoe did not have a warrant. The exact wording of the trial judge's admonition was as follows:

... The jury is admonished that Mr. Baze's belief as to the existence or non-existence of criminal charges pending against him in the State of Ohio is legally irrelevant to the events that occurred on January 30. Further, the law is that a person may be lawfully arrested by a law officer, without a warrant, upon reasonable information that the accused stands charged in the courts of another state with a crime punishable by imprisonment for a term exceeding one year....

Baze asserts that this admonition effectively prevented him from explaining his actions. We do not agree. He fully explained that his actions were based upon his belief that the charges were false and that Briscoe needed a warrant to arrest him. The trial judge's admonition merely informed the jury that under the law, Baze's beliefs were either incorrect or irrelevant to any claim of justification. Baze did not deny that he knew Briscoe was acting under color of official authority. Therefore, he could not resist arrest even if he believed the arrest was unlawful. KRS 520.090(1) and 1974 Commentary; KRS 503.060(1). Further, Briscoe did not need a warrant to arrest Baze on the Ohio charges. KRS 440.280. The admonition was a correct statement of law and affords no basis for a claim of error.

### Imperfect Self-defense Instruction

■ Baze claims that the alleged failure by the trial judge to instruct on imperfect self-defense was reversible error. We disagree. The instructions given by the trial court were proper. There is no dispute that Baze knew that the Sheriff and his Deputy

were police officers. He knew their purpose was to arrest him when they came to the cabin. Deputy Briscoe had earlier advised Baze of the charges. The Deputy, when confronted by an SKS assault rifle in the hands of Baze told him that he would not go up against such a rifle with a pistol and that he would return with backup. Briscoe did return with the Sheriff. Baze knew that valid charges existed as the reason for his arrest. His claim that he thought the charges were false is utterly self-serving and has no objective merit.

■ There was no evidence to justify a wanton or reckless self-defense instruction in this case. KRS 503.060(1) prohibits the use of any force on a police officer for the sole purpose of resisting arrest. There was never any testimony that Deputy Briscoe went for his gun during the first encounter at the Baze cabin. Baze's wife testified that she thought that Briscoe was going for his gun and hollered. Moments later, Baze shot the first two volleys into Briscoe's back. The self-defense instructions used here were qualified by the provisions of KRS 503.090 and KRS 503.060. There was no error.

■ Even though a defendant may believe that deadly physical force is necessary to protect himself against unlawful force by another, the use of such force is not justifiable when the defendant is resisting arrest by a police officer recognized to be acting under color of official authority and using no more force than reasonably necessary to effect the arrest even though the arrest is unlawful. Neither *Shannon v. Commonwealth*, Ky., 767 S.W.2d 548 (1989) nor *Holbrook v. Commonwealth*, Ky., 813 S.W.2d 811 (1991), are applicable.

### EED Instruction

Baze contends that an improper qualifier was used in regard to the EED instruction. Baze claims that the trial judge erred when he instructed the jury that Baze's defense of extreme emotional disturbance only existed if the jury found that Deputy Briscoe fired first. The only support for that contention is Baze's self-serving statement that Briscoe fired the first shot. All the other witnesses on the scene testified that neither the Sheriff

nor the Deputy fired the first shot. The Sheriff did not fire any shots. Baze's wife, while testifying for the defense, indicated that it was Baze who fired first. The defense psychologist, Dr. Berdani, admitted that it was normal for a defendant to render self-serving statements. Dr. Berdani testified that Baze was not insane and on cross-examination testified that Baze was not out of control: "My opinion would be that he was close to being out of control."

■ The instructions in this case conform to the legal requirements of due process. The subject of extreme emotional disturbance was addressed seven times in the guilt phase instructions. With respect to each victim, the jury was instructed on murder as the primary offense and first-degree manslaughter as the lesser included offense. The jury was also instructed separately on the presumption of innocence and the requirement that the defendant be acquitted of each homicide unless the jury believed beyond a reasonable doubt that he was guilty of that homicide. Each murder instruction included the absence of extreme emotional disturbance as an element of the offense, *i.e.*, the jury could only find the defendant guilty if they believed from the evidence beyond a reasonable doubt that he committed the offense "while not acting under the influence of extreme emotional disturbance." Each instruction on first-degree manslaughter included the presence of extreme emotional disturbance as an element of the offense, but contained the qualification that the extreme emotional disturbance must have been "caused by being shot at by Deputy Sheriff Arthur Briscoe." Each reasonable doubt instruction contained the mitigating paragraph required by *Gall v. Commonwealth*, Ky., 607 S.W.2d 97, 110 (1980), *overruled on other grounds, Payne v. Commonwealth*, Ky., 623 S.W.2d 867 (1981), *cert. denied*, 450 U.S. 989, 101 S.Ct. 1529, 67 L.Ed.2d 824 (1981), and *Edmonds v. Commonwealth*, Ky., 586 S.W.2d 24, 27 (1979), *overruled on other grounds, Wellman v. Commonwealth*, Ky., 694 S.W.2d 696 (1985), that if the jury believed beyond a reasonable doubt that Baze would otherwise be guilty of murder, but had a reasonable doubt as to whether Baze was acting under

extreme emotional disturbance, it should find him guilty of first-degree manslaughter. Instruction No. 11 recited the definition of extreme emotional disturbance set forth in *McClellan v. Commonwealth, supra.* Baze asserts error in the inclusion of the presence of extreme emotional disturbance as an element of the offense of first-degree manslaughter, as well as the qualification that the extreme emotional disturbance must have been caused by Baze's being shot at by Deputy Briscoe.

■ Extreme emotional disturbance is established only by a showing of some dramatic event which creates a temporary emotional disturbance. *Stanford v. Commonwealth,* Ky., 793 S.W.2d 112 (1990). There must be a "triggering event," which triggers an explosion of violence on the part of the defendant at the time he committed the offense. *Whitaker v. Commonwealth,* Ky., 895 S.W.2d 953 (1995); *Cecil v. Commonwealth,* Ky., 888 S.W.2d 669 (1994); *Morgan v. Commonwealth,* Ky., 878 S.W.2d 18 (1994); *Foster v. Commonwealth,* Ky., 827 S.W.2d 670 (1991), *cert. denied,* 506 U.S. 921, 113 S.Ct. 337, 121 L.Ed.2d 254 (1992). Evidence of mental illness does not prove extreme emotional disturbance. *Bowling v. Commonwealth,* Ky., 873 S.W.2d 175 (1993), *cert. denied,* 513 U.S. 862, 115 S.Ct. 176, 130 L.Ed.2d 112 (1994); *Stanford v. Commonwealth, supra.* Nor will evidence of duress or gradual victimization by the environment or evidence that the defendant was "uneasy" and "upset" suffice. *Thompson v. Commonwealth,* Ky., 862 S.W.2d 871 (1993); *Foster v. Commonwealth, supra.* The only evidence offered by Baze which remotely satisfied the requirement of a triggering event was his version that Briscoe shot first while Baze was unarmed and attempting to surrender.

■ Kentucky adheres to the "barebones" principle in instructing juries in criminal cases. Generally, evidentiary matters should be omitted from the instructions and left to the lawyers to flesh out in closing arguments. *McGuire v. Commonwealth,* Ky., 885 S.W.2d 931, 936 (1994). However, we do not believe the inclusion in the instructions on first-degree manslaughter of the only evidence which would justify an entitle-

ment to those instructions to be a prejudicial departure from this principle.

■ However, it was error to require the Commonwealth to prove the presence of extreme emotional disturbance as an element of the offense of first-degree manslaughter. The inclusion of this additional element required the Commonwealth to prove the absence of extreme emotional disturbance beyond a reasonable doubt in order to obtain a conviction of murder, and to prove the presence of extreme emotional disturbance beyond a reasonable doubt in order to obtain a conviction of murder, and to prove the presence of extreme emotional disturbance beyond a reasonable doubt in order to obtain a conviction of first-degree manslaughter. Theoretically, the jury could have found by a preponderance of the evidence, but not beyond a reasonable doubt, that Baze was or was not acting under the influence of extreme emotional disturbance. If so, the jury would have been required to acquit Baze of both charges. Placing a higher burden of proof on the Commonwealth than is required by law is an error favorable to the defendant. *Muncy v. Commonwealth,* 265 Ky. 730, 97 S.W.2d 606, 609 (1936). Errors which inure to the benefit of the defendant are not prejudicial. *Barbour v. Commonwealth,* Ky., 824 S.W.2d 861 (1992), *overruled on other grounds, McGinnis v. Commonwealth,* Ky., 875 S.W.2d 518 (1994). Thus, while the first-degree manslaughter instructions were erroneous, the error was not prejudicial to Baze.

### Character Evidence of Victims

■ The evidence regarding the character of the victims was introduced without objection and no error in that regard is claimed on appeal. It was not improper for the trial judge to exclude testimony offered in rebuttal that following a high speed chase of a stolen vehicle, Deputy Briscoe shot out three of the tires of the stolen vehicle to stop it.

The issue began with the Commonwealth's direct examination of Powell County Coroner Carl Wells, to wit:

Q. 33. Would you describe either one of them as being aggressive, gung-ho type of individuals?

A. No, Sir.

Q. 34. Would it be quite the opposite?

A. It would be the opposite.

To rebut this testimony, Baze proposed to introduce evidence concerning an incident in which Deputy Briscoe arrested one Doug Pasley for theft of an automobile. As reported in the January 16, 1992 edition of the local newspaper, Pasley attempted to elude Briscoe, but was captured when Briscoe shot out the tires of Pasley's vehicle. Briscoe is alleged to have approached Pasley with gun drawn and asked, "Do you want to meet your Maker?"

Inquiry was made of Coroner Wells, on cross-examination whether he "... knew of an incident that occurred in Powell County, Kentucky ... involving Deputy Briscoe?" Before Wells could respond, the Commonwealth interposed an objection which was sustained. Baze made no effort to obtain Wells' response by avowal. KRE 103(a)(2). Instead, he attempted to rebut Wells' testimony by offering a copy of the newspaper article and by attempting to call Pasley as a witness to testify to the facts of the incident. The trial judge properly sustained objections to both attempts. Baze also offered to rebut Wells' testimony by testifying to his own hearsay knowledge of the event. He testified by avowal that he "had been informed ... about Arthur Briscoe shooting out tires and so forth on this boy's car." He never claimed to have read the newspaper article or to have heard of the alleged "meet your Maker" threat.

Coroner Wells' testimony marginally qualified as evidence of the victims' character for peacefulness. KRE 404(a)(2). Thus, Baze should have been permitted to inquire whether Wells had heard of or knew about the facts surrounding Pasley's arrest, which at least constituted evidence of Briscoe's character for "aggressiveness." KRE 405(b). But whatever Wells' answer, further inquiry concerning that issue would then have been precluded. If Wells had admitted knowledge of the incident, the Commonwealth would have been entitled to an admonition that the

jury could consider that evidence only insofar as it affected the credibility of Wells' opinion of Briscoe's character for peacefulness (non-aggressiveness). *Broyles v. Commonwealth*, Ky., 267 S.W.2d 73, 74 (1954); Robert G. Lawson, *The Kentucky Evidence Law Handbook*, § 2.20, at 85 (3rd Ed., Michie, 1993). If Wells had denied knowledge of the incident, Baze could not have proven the incident by extraneous evidence, *i.e.*, the newspaper article, Pasley, or his own testimony. *Sanborn v. Commonwealth*, Ky., 754 S.W.2d 534, 548 (1988); *Etherton v. Commonwealth*, 246 Ky. 553, 55 S.W.2d 343, 347 (1932). If Wells did not know of the Pasley incident, the error in refusing to permit the inquiry was harmless. Of course, absent an avowal, there is no way to know what Wells' response would have been, *i.e.*, whether Baze was prejudiced by the error.

Unpreserved errors are reviewable in a case where the death penalty has been imposed. KRS 532.075(2); *Ice v. Commonwealth*, Ky., 667 S.W.2d 671, 674 (1984). But an unpreserved error cannot be reviewed when, as here, it is impossible to ascertain from the record whether the error was harmless or prejudicial. Prejudice will not be presumed from a silent record. *Walker v. Commonwealth*, Ky., 476 S.W.2d 630, 631 (1972). Furthermore, even if Wells would have responded that he knew of the prior incident involving Pasley's arrest, we are not persuaded that the exclusion of this evidence, which would serve only to impeach marginal character evidence, affected the jury's finding of guilt or its imposition of the death penalty in this case. *Sanders v. Commonwealth*, Ky., 801 S.W.2d 665, 668 (1990), *cert. denied*, 502 U.S. 831, 112 S.Ct. 107, 116 L.Ed.2d 76 (1991); *Cosby v. Commonwealth*, Ky., 776 S.W.2d 367, 369 (1989), *cert. denied*, 493 U.S. 1063, 110 S.Ct. 880, 107 L.Ed.2d 963 (1990).

Baze belatedly claims on appeal that his own testimony about the incident was admissible to show that he acted out of fear of Briscoe when he resisted arrest and killed Briscoe and Bennett. *See Carnes v. Commonwealth*, Ky., 453 S.W.2d 595 (1970). However, as pointed out in *Carnes*, the of-

fered evidence must have some reasonable relationship to the defendant's claim of self-defense. *Id.* at 598; *see also* Lawson, *supra,* § 8.05, at 366–67. It must tend to prove that the defendant had a justifiable fear of the victim at the time of their encounter. Lawson, *supra,* § 2.15, at 70. Baze's avowal testimony does not prove that he knew of Briscoe's alleged threatening remark to Pasley. The avowal proved only that Baze knew Briscoe had effected Pasley's arrest by shooting out the tires of the vehicle Pasley was driving. Nor did Baze testify that this information caused him to be in fear that Briscoe would kill him, but only that it "put some caution in me when dealing with him." The most logical interpretation of Baze's avowal is that his knowledge of Pasley's arrest caused him to be cautious about resisting Briscoe's efforts to effect his own arrest. It would be a great and impermissible leap in logic to infer from this avowal testimony that Baze so feared Briscoe that he believed he needed to kill him in self-protection.

### Replay of defense testimony

 The failure to replay the testimony of a defense witness during guilt phase deliberations was not reversible error. Any decision to allow the jury to have testimony replayed during its deliberations is within the sound discretion of the trial judge. We find no abuse of that discretion in this case. Although there may be some confusion regarding which tape was given to the jury, it cannot be concluded that the trial judge failed to replay the requested testimony. Under any circumstances, if the trial judge had denied the request, there would have been no reversible error. *See Jarvis v. Commonwealth,* 245 Ky. 790, 54 S.W.2d 307 (1932).

### Peremptory Challenges

Baze argues that the trial judge denied his right to intelligently exercise his ninth peremptory challenge on the correctional officer whom Baze had challenged for cause. The claim is made that the defense in essence, was forced to exhaust its ninth peremptory challenge on an individual who may have been disinclined to return a death sentence.

Baze was entitled to nine peremptory challenges. RCr 9.40(1) and (2). The list returned by Baze's counsel to the trial judge pursuant to RCr 9.36(2) contained only eight peremptory challenges. It was only after being furnished a copy of the Commonwealth's list that Baze's counsel requested permission to exercise his ninth peremptory challenge. That request was denied.

 "Peremptory challenges shall be exercised simultaneously ...," RCr 9.36(2), and "[n]o prospective juror may be challenged after being accepted unless the court for good cause permits it." RCr 9.36(3). Thus, when Baze returned his list containing only eight peremptory challenges, his right to a ninth peremptory challenge was extinguished. *Mitchell v. Commonwealth,* Ky., 492 S.W.2d 878 (1973). One obvious reason for this rule is to preclude a party from saving his last peremptory challenge until after he has examined the opposing party's list to insure that he does not waste a peremptory challenge on a juror who also has been challenged by the other party.

All of the trial judge's decisions to excuse or not to excuse prospective jurors for cause were correct. However, even if that were not so, Baze's failure to exhaust all of his peremptory challenges precludes him from asserting any errors in that regard. *Thomas v. Commonwealth,* Ky., 864 S.W.2d 252, 259 (1993), *cert. denied,* 510 U.S. 1177, 114 S.Ct. 1218, 127 L.Ed.2d 564 (1994).

### Proportionality Review

 In making the review required by KRS 532.075(3), we find nothing in the record that the death sentence was imposed under the influence of passion, prejudice or any other arbitrary factor. The death sentence was not excessive or disportionate to the penalty imposed in similar sentences since 1970 considering both the crime and the defendant. Similar cases have been previously recited by this Court in a number of decisions. *Simmons v. Commonwealth,* Ky., 746 S.W.2d 393 (1988) provides a comprehensive list and that list is incorporated herein by reference and our review in accordance with KRS 532.075(5). In addition, we have

also considered the case of *Moore v. Commonwealth, supra; Sanders v. Commonwealth, supra; Taylor v. Commonwealth*, Ky., 821 S.W.2d 72 (1991); *Epperson v. Commonwealth and Hodge v. Commonwealth*, Ky., 809 S.W.2d 835 (1991); *Haight v. Williamson*, Ky., 833 S.W.2d 821 (1992); *Wilson v. Commonwealth*, Ky., 836 S.W.2d 872 (1992); *Bowling v. Commonwealth, supra; Bussell v. Commonwealth*, Ky., 882 S.W.2d 111 (1994); *Sanborn v. Commonwealth*, Ky., 892 S.W.2d 542 (1995) and *Perdue v. Commonwealth*, 916 S.W.2d 148 (1996), affirmed in part and reversed in part. We have conducted an independent review of the circumstances and conclude that they exceed any minimum justifying capital punishment.

On cross-appeal, the Commonwealth argues that the trial judge committed error in allowing the defense counsel to proceed *ex parte* in requesting funds for experts. Although we believe it is prudent to discourage *ex parte* proceedings in a trial of this importance, we do not find reversible error in this case.

The judgment of conviction is affirmed.

STEPHENS, C.J., COOPER, GRAVES, JOHNSTONE and LAMBERT, JJ., concur.

STUMBO, J., concurs in part and dissents in part by separate opinion.

STUMBO, Justice, concurring in part and dissenting in part.

The court committed two reversible errors in the conduct of this trial, one in each phase. During the guilt phase of the trial, though requested to do so, the court refused to give an instruction that would have permitted the jury to find Baze guilty of second-degree manslaughter or reckless homicide pursuant to KRS 503.120(1). The penalty phase error occurred when the court refused to permit introduction of evidence of the penalty imposed on Appellant during related criminal proceedings in federal court.

Appellant's theory of defense to these crimes was that he acted in self-defense. He sought instructions which would have allowed the jury to convict him of either wanton manslaughter or reckless homicide; that is,

he argued that there was sufficient evidence before the jury for it to find that Appellant's belief in the need for self-defense, or in the degree of the use of force, was wanton or reckless. Appellant's contention is that the limitation of KRS 503.060(1), which negates self-defense when one is resisting arrest by a qualified peace officer using no more than the force reasonably necessary to effect an arrest, is inapplicable when evidence has been presented which would support a finding that the offender had an unreasonable belief that the officer was using "more force than reasonably necessary to effect the arrest."

Appellant does not deny that he caused the death of the two officers, or even that they were using no more than reasonably necessary force in their efforts to arrest him. He contends, and his defense was grounded upon this contention, that because of his emotional state, he could not recognize the reasonableness of their acts. I would reverse and remand for a new trial before a properly instructed jury.

Appellant had been charged with and convicted of a charge of possession of a firearm by a felon in federal court. During the sentencing hearing on that charge, the federal judge found that Appellant had used the rifle to commit murder, which increased the sentence he received under the federal sentencing guidelines. Appellant sought to introduce into evidence during the penalty phase of this trial the judgment of the federal court, and the parole consequences of that sentence, for the jury's consideration in setting his state sentence. The trial judge refused to permit the introduction of the federal sentence because the case was on appeal.

The Commonwealth cites *Thompson v. Commonwealth*, Ky., 862 S.W.2d 871 (1993), as controlling precedent. However, *Thompson* concerned the admission over the objection of a defendant, of a nonfinal, unrelated conviction as an aggravating circumstance for which the death penalty can be imposed. Here, the situation is far different. The conviction involves punishment imposed by a federal court for conduct at issue in the trial before the jury, the defendant has raised no objection to admission of the conviction, and

the conviction is being used for mitigation, not aggravation of sentence. The Commonwealth correctly notes that mitigation evidence is subject to the rules of relevancy and admissibility. I have no trouble finding that the evidence sought to be admitted was clearly relevant for the jury's consideration in determining whether to impose a term of years, life with or without parole, or a sentence of death.

The Eighth Amendment requires that the sentencing authority consider "relevant mitigating evidence" concerning the defendant's "character or record" and "the circumstances of the offense." *Skipper v. South Carolina,* 476 U.S. 1, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986); *Eddings v. Oklahoma,* 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982). That the offense involved gave rise to a criminal conviction which resulted in a twenty-year sentence that would be run consecutive to any sentence imposed by the jury, and that Appellant would have to serve a minimum of seventeen years of that sentence before he would be eligible for release is clearly a relevant consideration. That the conviction is not final is insufficient reason to bar this evidence. The Due Process clause of the Fourteenth Amendment has been held to prohibit the application of state hearsay rules so as to prevent a defendant in a capital murder case from submitting mitigating evidence during the sentencing phase of a trial. *Green v. Georgia,* 442 U.S. 95, 99 S.Ct. 2150, 60 L.Ed.2d 738 (1979). The Supreme Court examined the hearsay sought to be introduced and found that it was highly relevant and of sufficient reliability to be admissible. Here, the evidence consists of the record of a conviction in a federal court, clearly a reliable piece of evidence. I would reverse for a new sentencing hearing at which this relevant and reliable evidence could be considered by the jury.