RENDERED:  DECEMBER 6, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0958-MR

DAMON SUITER                                              APPELLANT


APPEAL FROM CHRISTIAN CIRCUIT COURT
v.          HONORABLE JOHN L. ATKINS, JUDGE
ACTION NO. 23-CR-00166


COMMONWEALTH OF KENTUCKY                        APPELLEE



OPINION
AFFIRMING

** ** ** ** **

BEFORE:  EASTON, GOODWINE, AND TAYLOR, JUDGES.

GOODWINE, JUDGE:  Damon Suiter appeals from an order of the Christian

Circuit Court which denied his motion to suppress evidence obtained from his

arrest by the Oak Grove Police Department.  Suiter argues that, in contravention of

KRS[1] 431.510, he was illegally detained by two bail bondsmen from Tennessee

prior to his arrest.  After careful review, we affirm the Christian Circuit Court.

---

[1] Kentucky Revised Statute.

On February 26, 2023, a telephone call came into the Oak Grove Police Department from two bail bondsmen, known from the record only as B.J. and Kojak, who traveled to Kentucky in search of Suiter, who they claimed had outstanding extraditable warrants in Tennessee. B.J. and Kojak claimed they had located Suiter and requested police assistance. Sergeant Francis Scarcello was at the police station at the time the call came in. He testified that dispatch confirmed the warrants before he left because if the warrants are not in the NCIC[2] database, there is nothing Kentucky law enforcement can do to assist. The warrants for Suiter were in NCIC, so Sergeant Scarcello responded to the call. Officer Zachary Lancaster also responded, but it is unclear from the record before us if he was already in the field or if he left the police station at the same time as Sergeant Scarcello.

Officer Lancaster's body camera was on while driving to the location and throughout the interaction with Suiter, B.J., Kojak, and Sergeant Scarcello. The entire interaction lasted just over six minutes. When Officer Lancaster arrived at the scene, Suiter was visible outside of an apartment building, and B.J. was walking towards the building but was still behind a parked pickup truck. When Officer Lancaster exited his car, B.J. immediately showed him a cellular telephone photograph matching Suiter. Officer Lancaster asked Suiter for identification, but

---

[2] National Crime Information Center.

Suiter responded that he did not have any and refused to give his name. During the interaction, Sergeant Scarcello and Kojak can be seen approaching from the left. Sergeant Scarcello later testified that Kojak approached him upon arrival and was also shown a photograph of Suiter but did not immediately see him. Using the name and photograph provided by the bail bondsmen, Officer Lancaster contacted dispatch to again confirm that Suiter had extraditable warrants from Tennessee. Once confirmed, Officer Lancaster placed Suiter under arrest. Suiter stated that he had a gun on his hip, which Sergeant Scarcello retrieved. A pat down by Officer Lancaster resulted in the seizure of a marijuana "vape pen" and a digital scale with marijuana residue on it. The body camera footage also showed Officer Lancaster pulling photographic identification from Suiter's wallet. Law enforcement then obtained a search warrant for Suiter's vehicle and recovered marijuana gummies. Suiter was charged with possession of a firearm by a convicted felon and various offenses related to the marijuana, which were enhanced due to the possession of a firearm.

Suiter filed a motion to suppress the evidence seized from his person and vehicle. He argued that he was illegally detained by the bail bondsmen prior to the arrival of law enforcement. The trial court conducted a hearing. Unfortunately, Officer Lancaster was recovering from an automobile accident and was unable to testify. Sergeant Scarcello did testify, and Officer Lancaster's body

camera footage was entered into evidence. Suiter did not testify. The trial court denied the motion, and Suiter entered a conditional guilty plea. Due to the more serious charges awaiting him in Tennessee, the trial court placed Suiter on unsupervised probation for one year. This appeal followed.

On appellate review of a trial court's denial of a motion to suppress, we first review the trial court's findings of fact under the substantial evidence standard. *Adcock v. Commonwealth*, 967 S.W.2d 6, 8 (Ky. 1998). An appellate court will not disturb a trial court's findings of fact if they are supported by substantial evidence. *Commonwealth v. Harrelson*, 14 S.W.3d 541, 549 (Ky. 2000). "Substantial evidence means evidence of substance and relevant consequence having the fitness to induce conviction in the minds of reasonable men." *Miller v. Tema Isenmann, Inc.*, 542 S.W.3d 265, 270 (Ky. 2018) (citation omitted). We then conduct a *de novo* review of the trial court's application of the law to the established facts to determine whether its ruling was correct as a matter of law. *Adcock*, 967 S.W.2d at 8.

On appeal, Suiter alludes to a constitutional argument, but focuses on what he argues were statutory violations by B.J. and Kojak which resulted in what he contends was an illegal detention. He asserts that, due to this illegal detention, all evidence seized after law enforcement arrived on the scene should have been excluded.

We first note that "evidence should not be excluded for the violation of provisions of a statute where no constitutional right is involved." *Beach v. Commonwealth*, 927 S.W.2d 826, 828 (Ky. 1996). The statute cited by Suiter is KRS 431.510, which defines bail bondsman in subsection (1), and further provides, in relevant part, that

> (2) It shall be unlawful for any person to engage in the business of bail bondsman or to otherwise for compensation or other consideration:
>
>> (a) Furnish bail or funds or property to serve as bail; or
>>
>> (b) Make bonds or enter into undertakings as surety; for the appearance of persons charged with any criminal offense or violation of law or ordinance punishable by fine, imprisonment, or death, before any of the courts of this state, or to secure the payment of fines imposed and of costs assessed by such courts upon a final disposition.

Suiter does not argue that KRS 431.510 invokes a constitutional right, and his arguments about constitutional and due process violations are vague. "[I]t is not the function of an appellate court to research and construct the legal arguments open to parties, especially when they are represented by counsel." *Harris v. Commonwealth*, 384 S.W.3d 117, 131 (Ky. 2012) (internal quotation marks and citation omitted.). We also remind Suiter that both the Fourth Amendment to the United States Constitution and § 10 of the Kentucky

Constitution apply only to state actions, not actions of private citizens. *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S. Ct. 2022, 29 L. Ed. 2d 564 (1971); *Stone v. Commonwealth*, 418 S.W.2d 646 (Ky. 1967). Therefore, *even if* the bail bondsmen had detained Suiter – which is not evident from the body camera footage – the exclusionary rule would not apply.[3]

KRS 440.270 is one of two statutes that provide guidance regarding procedures for arrest of a person with warrants from other states when those persons are located in Kentucky. KRS 440.270 provides a method for "any credible person" to appear before a judge in the Commonwealth and claim, under oath, that a person has a warrant in another state and request that a warrant be issued in Kentucky. Suiter argues this is what the bail bondsmen should have done before contacting him. We disagree. Although KRS 440.270 is *one* method, KRS 440.280 provides an alternative and states that

> [t]he arrest of a person may be lawfully made also by any peace officer or a private person, without a warrant upon reasonable information that the accused stands charged in

---

[3] Suiter chose not to testify to his version of events at the suppression hearing. A defendant

> may testify in his own behalf at a suppression hearing without waiving the privilege against self-incrimination. *Simmons v. United States*, 390 U.S. 377, 88 S. Ct. 967, 19 L. Ed. 2d 1247 (1968). Furthermore, testimony at a suppression hearing may be confined on cross-examination to the scope of the direct examination. *Shull v. Commonwealth*, 475 S.W.2d 469 (Ky. 1971).

*Grady v. Commonwealth*, 325 S.W.3d 333, 348 n.3 (Ky. 2010).

the courts of a state with a crime punishable by death or imprisonment for a term exceeding one (1) year, but when so arrested the accused must be taken before a judge with all practicable speed and complaint must be made against him under oath setting forth the ground for the arrest as in the preceding section; and thereafter his answer shall be heard as if he had been arrested on a warrant.

In other words, law enforcement did not need a warrant to arrest Suiter because they had "reasonable information" from the bail bondsmen that he had outstanding warrants in Tennessee, and the NCIC database confirmed this. *See Baze v. Commonwealth*, 965 S.W.2d 817, 821 (Ky. 1997).[4] Notably, Suiter does not address KRS 440.280 at all in his brief.

The trial court's decision is supported by substantial evidence, and the law was correctly applied to the facts in evidence. Accordingly, we affirm the Christian Circuit Court's order denying Suiter's motion to suppress.

ALL CONCUR.

---

[4] Suiter argues that Sergeant Scarcello's testimony regarding confirmation from the NCIC database is inconsistent with what is seen in the body camera footage. Sergeant Scarcello testified that he confirmed the Tennessee warrants prior to leaving the police station, but it *appears* that Officer Lancaster is possibly confirming the warrants for the first time just moments before placing Suiter under arrest. We discern no inconsistency. Officer Lancaster may not have been present in the police station with Sergeant Scarcello when he confirmed the warrants. Further, Sergeant Scarcello testified that it is common practice to confirm the warrants again once officers are on the scene and an arrest is imminent. Regardless, Suiter's argument is irrelevant under KRS 440.280.

BRIEFS FOR APPELLANT:

Sarah D. Dailey
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Russell Coleman
Attorney General of Kentucky

James Havey
Assistant Attorney General
Frankfort, Kentucky