RENDERED:  DECEMBER 17, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0410-MR


TONYA DALE RAY                                                APPELLANT


                    APPEAL FROM MCCRACKEN CIRCUIT COURT
v.          HONORABLE TIMOTHY C. STARK, SPECIAL JUDGE
                       ACTION NO. 17-CR-00813


COMMONWEALTH OF KENTUCKY                                      APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CLAYTON, CHIEF JUDGE; DIXON AND JONES, JUDGES.

CLAYTON, CHIEF JUDGE:  Tonya Dale Ray appeals from the McCracken

Circuit Court's judgment and sentence on plea of not guilty following a jury trial.

The jury found Ray guilty of first-degree perjury.  Ray claims multiple errors,

including the trial court's alleged errors in failing to grant Ray a directed verdict of

acquittal, allowing a jury instruction defining the phrase "material false statement," and failing to probate Ray. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On December 22, 2017, the McCracken Grand Jury indicted Ray on a single count of first-degree perjury. The indictment alleged that, on or about October 26, 2017, Ray had falsely testified in her official capacity as the county's elected jailer during a trial in McCracken District Court regarding a McCracken County Jail policy manual.

The indictment stemmed from an incident in February of 2017. Deputy Jailer Ben Green incorrectly re-classified several protective custody inmates in the McCracken County Jail and placed them in with the jail's general population. Once included with the general population, some of the general population inmates assaulted sixteen of the protective custody inmates. Because of this incident, the McCracken Grand Jury indicted Green in May of 2017 with sixteen counts of first-degree official misconduct, a Class A misdemeanor.

Meanwhile, on March 1, 2017, Bill Adams retired as McCracken County Jailer, and the county judge-executive appointed Ray to fill the remainder of Adams's term. Immediately upon taking office, Ray fired Green from his position at the McCracken County Jail.

Thereafter, the McCracken District Court scheduled a trial in Green's case for October 26, 2017, and Ray was subpoenaed to be a witness. On the day of the trial, and before empaneling a jury, Green's defense counsel argued that 501 Kentucky Administrative Regulation (KAR) 3:110, a regulation requiring each jail in Kentucky to develop a prisoner classification system and to include such system in the facility's written policy and procedure manual, did not apply to Green individually. Rather, Green's defense counsel argued that it only applied to the McCracken County Jail as an entity. Green's counsel further argued that the McCracken County Jail had not adopted such policies and procedures on the date of the incident in question. Thus, the defense argued that the indictment was fatally flawed. In response, the Commonwealth produced a two-page document dealing with the classification of inmates in protective custody and purporting to refute Green's defense counsel's allegations.

To clarify this issue before trial, the district court stated that if there were no classification policy in the jail's manual at the time of the incident, Green would win the case on a motion for a directed verdict. Consequently, the judge decided the easiest solution was to conduct a short pre-trial hearing to determine the substance of Ray's testimony concerning the existence of any classification policy in the jail's policy manual.

The district court later summarized Ray's testimony in a subsequent order as follows:

1. Jailer Ray stated that prior to becoming the McCracken County Jailer, she had been employed by the jail, but that she had not seen a policies and procedures manual of any kind.

2. Jailer Ray then authenticated a bound booklet, published in October 2010, that she repeatedly referred to as "the" policies and procedures manual for the McCracken County Jail.

3. The Commonwealth presented Jailer Ray with a separate two-page, updated document, marked "V-200 1 of 1," provided by Captain Tray English of the McCracken County Jail to the Commonwealth prior to the indictment. This document provides for separation of inmates under 501 KAR 3:110, but curiously this document is not in the bound booklet that Jailer Ray stated was "the" policies and procedures manual.

4. When questioned about the existence of a document which ostensibly seemed to be separate from "the" policies and procedures manual, Jailer Ray stated that Captain English "probably got it off the internet."

5. Jailer Ray also stated that the two-page document may have been part of an "old" policies and procedures manual.

6. Jailer Ray also testified that she may have subsequently added the two-page document to "the" policies and procedures manual following her appointment as Jailer in March of 2017, which appointment was after the February 21, 2017, incident which led to this indictment.

7. Although Jailer Ray's testimony was at times somewhat equivocal, Jailer Ray adamantly testified that the two-page document provided to the Commonwealth by Capt. English was not a part of what she authenticated as "the" policies and procedures manual for the McCracken County Jail.

The district court concluded its order by dismissing Green's charges without prejudice, determining that Ray's testimony, "as the custodian of the records of the McCracken County Jail," was "all but conclusive of the matter." Thus, the district court ruled that, because the policies and procedures manual of the McCracken County Jail did not contain provisions regarding the separation of prisoners under 501 KAR 3:110, the indictment as issued against Green could not stand.

Thereafter, in February of 2018, the special prosecutor on Green's case received a letter from the United States Department of Justice Civil Rights Division (the "DOJ") indicating that it had opened an investigation of the incident involving Green for possible civil rights violations. However, the DOJ further stated that it was willing to close its case if Green reached an acceptable plea deal with the Commonwealth.

Shortly thereafter, on February 9, 2018, Green was re-indicted by the McCracken Grand Jury with sixteen counts of first-degree official misconduct using the same language as the first indictment. Green ultimately entered an

*Alford*[1] plea to sixteen counts of second-degree official misconduct and was sentenced to thirty (30) days in jail. The district court conditionally discharged Green's sentence for two (2) years.

The McCracken Grand Jury subsequently issued the indictment against Ray. The indictment against Ray alleged that she had committed perjury during her testimony at the pre-trial hearing in Green's case. Particularly, Ray was charged with making false statements during her testimony in which she stated that the two-page document regarding the separation of inmates in protective custody was not a part of the policies and procedures manual in effect when the incident with Green occurred.

The McCracken Circuit Court held a trial on January 30, 2020, and the jury ultimately found Ray guilty of first-degree perjury. Before the trial's sentencing phase, the Commonwealth offered to recommend a one-year sentence, which Ray accepted. Consequently, on March 17, 2020, the trial court sentenced Ray to one year in prison and declined to probate Ray's sentence.

We will discuss further facts as they become relevant in this Opinion.

---

[1] *North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

# ANALYSIS

### a. **Directed Verdict**

Ray first argues that the trial court erred when it denied her motion for a directed verdict. Specifically, Ray argues that, although her testimony concerning which policies and procedures manual were in effect was incorrect, she was mistaken and had not intentionally or deliberately given such false testimony. Ray further argues that her testimony was not material to the overall issue of whether Green was guilty of official misconduct. The applicable statute is Kentucky Revised Statutes (KRS) 523.020(1), which states that a person is guilty of first-degree perjury "when he or she makes a *material* false statement, *which he or she does not believe* . . . [i]n any official proceeding under an oath required or authorized by law[.]" (Emphasis added.)

Our review of whether the trial court erred in denying Ray's motion for a directed verdict is whether, "under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt[.]" *Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky. 1991) (citation omitted). For it is "only then the defendant is entitled to a directed verdict of acquittal." *Id*. (citation omitted).

In this case, the only issues in dispute were whether Ray did not believe her testimony at Green's pre-trial hearing and whether her testimony at Green's pre-trial hearing was material. As to the issue of whether Ray did or did

not believe her testimony at Green's pre-trial hearing, the jury in Ray's perjury trial was presented with evidence that, following the dismissal of Green's charges, Kentucky State Police Detective Cory Hamby investigated the confusion surrounding the correct version of the policies and procedures manual in effect at the applicable time and whether that version included the classification of protective custody inmates. To that end, Detective Hamby testified that he obtained a full copy of the correct manual dated 2012 and not 2010. He further testified that when he interviewed Ray as part of his investigation, he located a copy of the 2012 policy manual in her office, which contained the classification policy. Moreover, Detective Hamby discovered that Ray had also received an email containing a policy manual identical to the 2012 policy manual.

Alternatively, Ray's defense counsel presented evidence to the jury that, because the jail was in such disarray when Ray took over as jailer, she was simply confused over which manual was in effect at the time of the February 2017 incident. Thus, her testimony at Green's trial was the result of a mistake, rather than deliberately false.

As a result, the jury heard the details of Ray's actions before her testimony at Green's pre-trial hearing, Ray's explanations for such actions and testimony, as well as the Commonwealth's evidence that Ray had in her possession at least two versions of the 2012 manual containing the classification policy.

As stated in *Benham*, "[f]or the purpose of ruling on [a directed verdict] motion, the trial court must assume that the evidence for the Commonwealth is true, but reserving to the jury questions as to the credibility and weight to be given to such testimony." 816 S.W.2d at 187 (citation omitted). Consequently, after being presented with the foregoing evidence, and assuming that the Commonwealth's evidence was true, it would have been inappropriate for the judge to determine its weight and credibility. Rather, it was for the jury to consider the evidence and all reasonable inferences therefrom as to whether Ray was merely mistaken at Green's pre-trial hearing or was knowingly making a false statement under oath. As a result, the trial court did not err in denying Ray's motion for a directed verdict based on Ray's arguments that she was mistaken and had not intentionally lied.

Ray next argues that the trial court should have granted her motion for a directed verdict, as her testimony at Green's pre-trial hearing was not material. A "material false statement" is "any false statement, regardless of its admissibility under the rules of evidence[,] which *could have* affected the outcome of the proceeding." KRS 523.010(1) (emphasis added). The preceding language indicates that "[i]t is not necessary that testimony, to be material, must relate to the principal issue in a case. It is sufficiently material if it has the *potential* to influence a tribunal or a jury." *Commonwealth v. Thurman*, 691 S.W.2d 213, 215

(Ky. 1985) (citation omitted) (emphasis added). Moreover, the Kentucky Supreme

Court has noted that:

> [t]he Commentary to KRS 523.020 explains that the drafters of the Kentucky Penal Code *intended a broad construction of "material"* . . . the definition of materiality (KRS 523.020(1)) specifically *includes all false statements* which could have affected the outcome of the proceeding, *regardless of the actual effect* or admissibility *of the statement*.

*Holbrooks v. Commonwealth*, 85 S.W.3d 563, 569 (Ky. 2002) (emphasis added).

Thus, to constitute first-degree perjury, the materiality of an

individual's false statements does not depend upon the result of the proceedings in

which such statements occurred. The fact that the false testimony was not needed

to achieve the ultimate resolution does not render it immaterial.

Here, the first indictments issued against Green stated that he had

"knowingly violated lawfully adopted rules or regulations relating to his office[.]"

Ray's testimony went to whether there were "lawfully adopted rules," *i.e.* jail

policies, concerning the classification of protective custody inmates. Further, the

district court stated in its order that Ray's testimony was "all but conclusive of the

matter" when it dismissed the first indictment against Green. The fact that Ray's

testimony was ultimately unnecessary to facilitate the Commonwealth's

acquisition of an *Alford* plea from Green does not render Ray's statements

immaterial under the statutory definition. Thus, we conclude that the trial court

-10-

correctly denied Ray's motion for a directed verdict of acquittal after determining that Ray made "material" false statements.

Moreover, we do not believe that "under the evidence as a whole, it would be clearly unreasonable" for the jury in this case to find guilt. *Benham*, 816 S.W.2d at 187. Looking at the entirety of the foregoing evidence, it would not be unreasonable for the jury to conclude that Ray was guilty of all the elements contained in KRS 523.020(1).

### b. Jury Instructions Defining "Material False Statement"

Ray next argues that the trial court erred when defining the phrase "material false statement" in the jury instructions. Here, when Ray's defense counsel and the Commonwealth were discussing the jury instructions with the trial court after the presentation of the evidence, defense counsel objected to including the definition of "material false statement." Specifically, defense counsel argued that "materiality" was a matter of law for the court to determine and not a question of fact for the jury under Kentucky case law. Alternatively, the Commonwealth argued that materiality was an element of the crime of first-degree perjury under KRS 523.020(1). Ultimately, the trial court instructed the jury that "material false statement" meant "any false statement which could have affected the outcome of the proceeding."

We note that KRS 523.010(1)'s definition of "material false statement" includes the following language: "[w]hether a falsification is material in a given factual situation is a question of law." In this case, the trial judge made such a determination both when denying Ray's motion for a directed verdict and in chambers while discussing the jury instructions. Having made this determination, Ray argues that it was an error for the jury instructions to define "material false statement."

However, the Kentucky Supreme Court has stated that "criminal convictions must rest upon a jury determination that the defendant is guilty of each and every element of the crime with which he [or she] is charged." *Thacker v. Commonwealth*, 194 S.W.3d 287, 289 (Ky. 2006) (citations omitted). And "materiality to the issue is an element of the offense of perjury[.]" *Gibson v. Commonwealth*, 328 S.W.2d 162, 163 (Ky. 1959) (citation omitted).

Thus, after the trial court determined that Ray's statements were material, it was proper to include in the jury instructions the statutory definition of "material false statement" – an essential element of first-degree perjury – to the jury and let them apply such definition to the facts of the case. Moreover, the Kentucky Supreme Court has held that "[p]lacing a higher burden of proof on the Commonwealth than is required by law is an error favorable to the defendant." *Baze v. Commonwealth*, 965 S.W.2d 817, 823 (Ky. 1997) (citation omitted).

-12-

Indeed, "[e]rrors which inure to the benefit of the defendant are not prejudicial."

*Id*. (citations omitted).  We affirm as to this issue.

### c.  **Failure to Probate Ray's Sentence**

Ray next argues that the trial court erred by declining to probate Ray's one-year sentence.  Ray also claims that the trial court statements about probating public officials who commit crimes involving their office violated the law.

As previously discussed, the trial court sentenced Ray to one year in prison and declined to probate her sentence.  KRS 533.010(2) sets out a trial court's obligation during a sentencing hearing:

> (2) Before imposition of a sentence of imprisonment, the court shall consider probation, probation with an alternative sentencing plan, or conditional discharge. Unless the defendant is a violent felon as defined in KRS 439.3401 or a statute prohibits probation, shock probation, or conditional discharge, after due consideration of the defendant's risk and needs assessment, nature and circumstances of the crime, and the history, character, and condition of the defendant, probation or conditional discharge shall be granted, unless the court is of the opinion that imprisonment is necessary for protection of the public because:
>
> . . . .
>
> (c) A disposition under this chapter will unduly depreciate the seriousness of the defendant's crime.

-13-

The standard for reviewing a trial court's decision to probate a defendant's sentence is an abuse of discretion. *Knox v. Commonwealth*, 361 S.W.3d 891, 895 (Ky. 2012).

Here, the trial court considered Ray's risks and needs assessment and her history, character, and condition as required by the statute. The trial court discussed that Ray's perjury was not for her benefit and then weighed that fact against the nature and circumstances of the crime. Moreover, the court discussed that Ray was a public official whom the jury had convicted of a crime involving her office. Finally, in denying probation, the trial court quoted the statute, stating "probation or conditional discharge would seriously depreciate the seriousness of the crime."

The trial court then stated that this was the case only because the jury had convicted Ray of a crime involving her office. The trial court made it clear that it did not have a blanket policy against probating public officials. The trial court reinforced that a public official convicted of shoplifting, for example, should receive the same treatment as anyone else. The trial court also indicated it would be open to considering a motion for shock probation due to Ray's lack of a criminal record. Thus, because the trial court followed the requirements of KRS 533.010(2) and considered all factors for and against probation, we affirm as to this issue.

-14-

### d. **Cumulative Error**

Finally, Ray alleges six errors which she claims constitute cumulative error. These errors include statements made by the prosecutor during both his opening and closing arguments, statements made by the special prosecutor in Green's case during his testimony, some of the Commonwealth's questions and Detective Hamby's answers during Detective Hamby's direct examination, and some of the Commonwealth's questions during its cross-examination of Ray.

Cumulative error is "the doctrine under which multiple errors, although harmless individually, may be deemed reversible if their cumulative effect is to render the trial fundamentally unfair." *Brown v. Commonwealth*, 313 S.W.3d 577, 631 (Ky. 2010). The Kentucky Supreme Court has "found cumulative error only where the individual errors were themselves substantial, bordering, at least, on the prejudicial." *Id.* (citation omitted).

First, Ray asserts that the claim made by the prosecutor during opening statements that Ray clapped when she found out that the district court had dismissed Green's charges constituted palpable error because the Commonwealth did not introduce evidence of this during its case. To prove a palpable error, Ray must show "probability of a different result or error so fundamental as to threaten a defendant's entitlement to due process of law." *Martin v. Commonwealth*, 207 S.W.3d 1, 3 (Ky. 2006).

In this case, the statement in question was not the only time the jury heard that Ray may have been biased in Green's favor. In her testimony, Ray admitted that she had posted on Green's Facebook profile that she "loved him like a little brother." Given that Ray herself admitted her bias towards Green, we do not believe that the prosecutor's statement affected the trial's outcome or denied Ray her right to due process.

Ray next contends that the special prosecutor's testimony about the materiality of Ray's testimony was prejudicial. However, in this case, the trial court pointed out in response to defense counsel's objection that, although the Commonwealth was barred from asking the witness to draw a legal conclusion as to whether Ray's testimony at Green's pre-trial hearing was "material," the witness could be asked questions that went toward the issue of materiality as an element of the crime of first-degree perjury.

Ray's third allegation of error is that a mistrial was warranted when the Commonwealth elicited prejudicial information from Detective Hamby that Ray loved Green like a little brother through leading questions. Following defense counsel's objection to the leading questions and a motion for a mistrial, the trial court denied the motion but ruled that the Commonwealth had led the witness "a tad" and admonished the jury to disregard the testimony.

Leading questions should not be used on direct examination unless "necessary to develop the witness' testimony." Kentucky Rule of Evidence (KRE) 611(c). The Kentucky Supreme Court has indicated that "judgments will not be reversed because of leading questions unless the trial judge abused his discretion and a shocking miscarriage of justice resulted." *Tamme v. Commonwealth*, 973 S.W.2d 13, 27 (Ky. 1998), *as modified on denial of reh'g* (Sep. 3, 1998).

We agree with the trial court's determination that the Commonwealth, here, was impermissibly leading its witness. However, we find that this exchange caused no prejudice warranting a mistrial. As previously discussed, the jury had heard similar facts through Ray's testimony of her Facebook post stating that she "loved him like a brother." Because Ray herself testified to the same facts, there was no "shocking miscarriage of justice" here that would warrant reversal due to leading questions. *Id*.

Ray's remaining allegations of error as to specific lines of questioning by the Commonwealth or witness testimony falls into one of three categories. The first category is claims of error regarding statements that ultimately involve weighing the credibility of such statements, which is a function of the jury and a task we decline to undertake. *Miller v. Commonwealth*, 283 S.W.3d 690, 697 (Ky. 2009).

The second category is claims of error regarding statements that the trial court addressed during the trial, with the trial court either clarifying or admonishing the jury to disregard such statements and defense counsel agreeing that such admonishments were the appropriate and proper remedy at trial. In such a case, "[i]n the absence of a request for further relief, it must be assumed that appellant was satisfied with the relief granted, and he cannot now be heard to complain." *Baker v. Commonwealth*, 973 S.W.2d 54, 56 (Ky. 1998), *overruled on other grounds by Ray v. Commonwealth*, 611 S.W.3d 250 (Ky. 2020).

The third category is claims regarding statements from the Commonwealth that the trial court properly allowed, such as a statement made during the Commonwealth's closing arguments concerning Ray's potential bias. We agree with the trial court that the Commonwealth had questioned Ray concerning the subject during cross-examination, and the Kentucky Supreme Court has stated that "[a] prosecutor may comment on . . . evidence" in his or her closing arguments. *Slaughter v. Commonwealth*, 744 S.W.2d 407, 412 (Ky. 1987). Thus, we find no cumulative error as to any of the preceding claims of error.

## CONCLUSION

For the foregoing reasons, we affirm the McCracken Circuit Court.


ALL CONCUR.

BRIEF FOR APPELLANT:

Thomas E. Clay
Beth Lewis Maze
Louisville, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Jenny L. Sanders
Assistant Attorney General
Frankfort, Kentucky